**Warren NICHOLS, Appellant-Respondent,**

v.

**Charlotte D. BLAKE, Respondent-Appellant.**

**No. 51184.**

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

As Modified on Court's Own Motion
Nov. 24, 1965.

Sherman Landau, St. Louis, for appellant-respondent.

Murphy & Kortenhof, Ben Ely, Jr., St. Louis, for respondent-appellant.

EAGER, Presiding Judge.

This is a suit for personal injuries arising from an automobile collision. There is no contention that plaintiff did not make a submissible case of negligence, so it will not be necessary to discuss the facts of the occurrence in detail. Plaintiff had a verdict for $3,500. Defendant filed a motion for new trial, and plaintiff later filed his motion, but confined it to the issue of damages. At the presentation of the motions, counsel for defendant asked orally in the alternative for a new trial on damages only. The trial court overruled both motions and each party appealed. Defendant's counsel have not seen fit to brief the plaintiff's appeal as a respondent, but have limited their brief to the points on defendant's appeal. It will be necessary to consider the appeals separately.

Our jurisdiction lies in the fact that plaintiff, at trial, claimed damages in the sum of $22,500, and the difference between that sum and the amount of his recovery exceeds $15,000. Pinkston v. McClanahan, Mo., 350 S.W.2d 724.

Briefly, the facts of the occurrence were as now set out. On October 22, 1962, at about 10:30 a. m. defendant Charlotte D. Blake, 84 years of age, was driving a 1951 Plymouth and seeking to go from her home to some location in St. Louis County. Her husband, somewhat older, was riding with her. She had missed a turn and, immediately prior to the collision, she was retracing her route to some extent. She proceeded north on Olive Street Road to its junction with east and west Highway 40, a four-lane road with no divider, on which there was a 70 mile speed limit. A short distance west of that junction No. 40 began a distinct downslope to the west, so that the view west from the junction was much limited. According to defendant's testimony she stopped at No. 40, saw nothing coming either way, then turned slowly east (right), looked to her rear, and started very slowly to make a "U-turn," intending to get back on Olive Street. After she started to turn, she saw plaintiff's car coming from the west "fast," and tried to turn back to the right; however, the left front of her car and the right side of plaintiff's car collided; she further testified that at the moment of impact she was "stopped," and that she had not "quite gotten to the center of the highway" (perhaps inconsistent with her stated turn to the right). She was not injured and her husband was not injured. The husband was ill at the time of trial and did not testify.

Plaintiff testified: that he had been traveling at approximately 55 miles an hour but had slowed somewhat before he saw the defendant because he expected to turn; that he was traveling in the lane closest to the center line; that he saw her car as he came over the crest of the hill, and it was coming out of the intersection and heading slowly east in the outer lane; that suddenly defendant began a "U-turn" and blocked both eastbound lanes; that he first started to pass her on the right but saw a steep dropoff on that side, applied his brakes, sounded his horn, and swung to the left; that, in the meantime, defendant had stopped, but started up again; that as he tried to pass on the left (getting pretty well over into the westbound lanes), the left front of defendant's car struck the right side of his car, just behind the right door. Plaintiff testified that the impact occurred in the westbound lanes. He had decreased his speed to 20–25 miles an hour, and was "al-

most skidding" at the time. There was no other traffic. Plaintiff was thrown to his right, and against the right door or doorpost, striking the right side of his back. Both cars were eventually driven away. Plaintiff testified that the cost of repairing his car was in excess of $500, but the car was owned by the Nichols Equipment Company, a corporation, and the extent of the damage was shown, apparently, to demonstrate the force of the impact.

The case was tried primarily on the issue of damages. Plaintiff had been, and was, in the business of selling certain types of industrial equipment, such as pneumatic air tools, hoisting equipment, etc.; he had worked until the end of September, 1960, for Master Power Corporation, earning $15,468.50 in the first nine months of that year. He then quit voluntarily to start his own company, selling similar lines; the new company was incorporated, but plaintiff handled most of the sales work, was its president, and obviously was the managing official. His wife and two of plaintiff's friends were directors; plaintiff owned 69% of the stock. In 1960 (three months) he received as compensation $250; in 1961, $1,200–$1,400; in 1962, $2,600 or a little more; in 1963, $12,700; and in 1964 he was drawing a salary at the same rate as 1963. He had never actually received $20,000 in any one year from either company.

Plaintiff had suffered an infection of his left hip in 1941, for which there had been several operations. This left him with his left leg shortened a little more than an inch and with a restricted motion in that leg. He testified that this had not hampered his activities. In his further testimony he said: that after the collision involved here his neck and back were very sore, that his neck recuperated but that his back had progressively given him trouble, above and below the waist; that he had had no such trouble previously; that after the injury he used heat, sedatives and rest for about ten weeks before he went to a doctor; that during that period he lost about eight or nine half days from his work and that he had continued to lose from two to four half days per month up to the time of trial; that on those days he would simply quit early to go home and rest, and that he does substantially nothing but rest on Saturdays and Sundays; that it is particularly difficult for him to drive long distances as he previously did, and that he has frequently shifted to planes for his longer trips; that the injury has affected his ability to do his work in various particulars, and that "it has affected my income"; that he has entirely quit playing golf and taking care of his yard. On January 11, 1963, he went to a doctor of osteopathy, Dr. Wm. F. Luebbert, who specialized in orthopedics. He received heat treatments and manipulations, began to wear a brace prescribed for his back, and had his left shoe built up. He continued to go to this doctor about once a month. His medical bill to the time of trial was $157. No other special damages were shown. He has difficulty in sitting long in one position and is required to be careful of the type of seats he uses. He did not claim to have missed any full days of work. Plaintiff's wife largely corroborated his testimony concerning sundry of his incapacities since the injury.

Nothing particularly material was developed in the testimony of the Highway Patrolman who came to the scene; he did testify that the major part of the debris was 2–3 feet south of the center line, which would seem to have placed the impact largely in the eastbound lanes.

Plaintiff's osteopathic physician testified that he found (in addition to the impairment of the left hip) limited motion in plaintiff's back and muscle spasm in the region of the first and second lumbar vertebrae; his conclusion was that there was a strain of the "thoracic and lumbar spine" with inflammation of the muscles and that there was a direct connection between plaintiff's condition and the collision; he also testified that plaintiff would continue to need medical care in the future, and stated the belief that the condition result-

ing from the collision was permanent. He admitted that the shortness of one leg, and the consequent tilting of pelvis, could cause back strain, and that it was "possible" that plaintiff's complaints could have been so caused. Dr. Earl Holt, an orthopedic surgeon, examined plaintiff about a year before the trial and noted the impairment of the left hip; he testified that it was his conclusion that any existing disability was due to the hip impairment which had caused strain on the low back, and that he found no residue of any injury to plaintiff's back from the collision. He admitted that one with such a hip was more apt to be hurt in an accident.

Plaintiff's expectancy was shown to be 29.42 years. Defendant's husband was originally a defendant, but plaintiff dismissed as to him at the trial. Certain other features of the evidence will be referred to later.

On plaintiff's appeal, two points are made: (1) that the court erred in refusing to admit in evidence a transcript from a Magistrate's Court which showed that defendant had entered a plea of guilty to a charge of "failure to yield right of way," being a declaration against her interest; and (2), that the amount of the verdict and judgment was "unrealistic, unjust, and grossly inadequate * * *." We first consider that appeal.

■ On (1), supra, plaintiff cites Myers v. Maryland Casualty Co., 123 Mo.App. 682, 101 S.W. 124, 127; Neibling v. Terry, 352 Mo. 396, 177 S.W.2d 502, 152 A.L.R. 249. These opinions merely state the doctrine that the results of criminal proceedings, generally, are not admissible in civil actions because the parties, the issues, and the requirements of proof are different; but that, as an exception to the rule, pleas of guilty have been received as confessions or declarations against interest. This point was not raised in plaintiff's motion for a new trial in any manner, and it is now foreclosed. The motion for new trial attacked only the inadequacy of the verdict.

It would be entirely too tenuous to say that the present point was included because it conceivably might have affected the size of the verdict. As a further reason, if any could conceivably be needed, the admission of such an exhibit could only go to establish defendant's liability, and the verdict itself established that. The point is denied.

■ On the alleged inadequacy of the verdict plaintiff cites Donahoo v. Illinois Terminal R. R. Co., Mo., 300 S.W.2d 461, Gooch v. Lake, Mo., 327 S.W.2d 132, and 25 C.J.S. Damages § 40, as holding that impairment of earning capacity is a proper element of compensation. There would seem to be no doubt concerning the validity of the principle, but the evidence must establish that contention with reasonable certainty in order to justify submission. C.J.S., supra. Here, this element of damage was specifically submitted in Instruction No. 9. Apparently, what counsel really argues is that the jury disregarded this evidence. Counsel says that because plaintiff was earning at the rate of $20,000 a year in the first nine months of 1960, before he left the Master Power Corporation, he was entitled to have the jury consider all of his lost time, past and future, on that basis. One difficulty with the argument is that plaintiff voluntarily abandoned the employment where he was earning at that rate, and started a *new business* in which many elements might affect his own earnings, as well as those of the new corporation. One could hardly say without speculation that either before or after trial he would have earned at the rate of $20,000 per year in his new employment, except for the disability he claimed to have suffered. All of this evidence was before the jury and it passed on the issue. He testified that he did lose some time from his work and suffered various inconveniences. The jury also had evidence before it that any remaining incapacity was due to his prior hip impairment; on that theory, if accepted, the jury could have awarded him a sum computed as compensation for cer-

tain inconveniences and loss of time for a period immediately following the accident.

■ It seems unnecessary here to review our various cases discussing the question of inadequate verdicts. See generally: Brown v. Moore, Mo., 248 S.W.2d 553; Hufft v. Kuhn, Mo., 277 S.W.2d 552; Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426; Spica v. McDonald, Mo., 334 S.W.2d 365; Glore v. Bone, Mo., 324 S.W.2d 633, and cases there cited; Pinkston v. McClanahan, Mo., 350 S.W.2d 724. It has been said that the appellate court should interfere only when the verdict is "grossly and shockingly inadequate" (Brown, supra), or when it appears to have been the result of "passion and prejudice" Brown, Hufft, Pinkston) or "misconduct of the jury" (Pinkston) or an "arbitrary abuse" of the jury's discretion (Brown, Pinkston). We consider the better rule to be that, while of course the appellate court does not weigh the evidence, it should "limit its inquiry to the determination of whether there is substantial evidence to support the jury's verdict and whether the trial court abused its discretion in refusing to grant plaintiff a new trial." (Bone, supra); and, further, that " * * * by the phrase 'substantial evidence to support the verdict,' as here used, is meant and it includes whether the amount of the verdict is responsive to the evidence on the issue of damages, * * *." (Pinkston, supra.) Applying these rules, we may not say that this verdict was not responsive to the evidence as a whole, or that there was not substantial evidence to support it. The trial court gave this matter careful consideration as indicated in its memorandum opinion. We certainly may not say that it abused its discretion. Plaintiff's Point 2 is denied.

On defendant's appeal four points are raised: (1) that the court erred in permitting plaintiff's counsel to argue to the jury a calculation of lost earnings at the rate of $20,000 a year; (2) that the court erred in not permitting defendant's counsel to read to the jury the prayer of plaintiff's original petition for $3,500 in damages; (3) that it was error to permit in evidence the earnings of Nichols Equipment Company; and (4) that the reference in argument by plaintiff's counsel to "settlement negotiations" constituted prejudicial error. We take up these points in the order stated.

■ On (1), counsel cite two cases to the effect that it is erroneous to permit an argument by counsel upon any basis not supported by the evidence. Reese v. Illinois Terminal R. R. Co., Mo., 273 S.W.2d 217; Wartenbe v. Car-Anth Mfg. & Supply Co., Mo.App., 362 S.W.2d 54. There need be no argument about that principle, as such. Here counsel for plaintiff argued, over objections, that based on plaintiff's "proven earning capacity" of $20,000 a year, he lost $40 for each lost half day, and that such lost earnings, computed to continue as in the past for the period of his expectancy, would be $33,120. There was evidence that for the first nine months of 1960 plaintiff's earnings were at the rate of $20,000 a year. But he abandoned that rate of earnings *and his job*, and embarked upon a new career of his own choosing. It would be highly speculative to say that he could attain that rate of earning in his new business, for there are entirely too many elements involved in such a venture. We hold that it was improper to argue here a specific anticipated loss based on plaintiff's earnings in his prior and abandoned position. While this argument was improper, we do not consider that it was prejudicial. Counsel make no specific point here (although they did in the trial court) that the verdict was excessive, but more or less seek to "back into" that contention, stating that the verdict's "excessive nature reflects the effect of the lost earnings argument by plaintiff's counsel." It can hardly be conceived that the jury here was substantially motivated by that argument. The amount of the verdict was well within the range of the permissible evidence, if the jury believed the substantial parts of plaintiff's testimony.

■ Next counsel complain of the refusal to permit the reading to the jury of plaintiff's prayer for $3,500 in his original petition, later twice amended and standing at $22,500 at trial. That petition was filed on January 2, 1963, which, as counsel emphasize, was nine days before plaintiff first went to a doctor. The court did permit the reading of a paragraph from that petition stating that plaintiff had incurred medical expense. Apparently, the theory of the trial court in rejecting the offer to read the prayer was that the prayer was, legally, no part of the petition and that it had nothing to do with the issues. There are cases which so state. Richards v. Earls, 345 Mo. 260, 133 S.W.2d 381, 385, citing cases; Zimmerman v. Jones, Mo.App., 236 S.W.2d 401, 404. These are opinions in which the court sought to determine the nature of the respective suits, generally whether law or equity; and those statements mean, as we interpret them, that the prayer may not be considered as a substantive part of the petition so as to alter its true nature. However, if a party has made a claim or statement which is inconsistent with his claims at trial, it should be received as a declaration against his interest, for whatever it may or may not be worth,—whether it be in the prayer of a petition or in an extrajudicial statement or otherwise. See, generally, Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 350 S.W.2d 786. But, again, we cannot find that the refusal of this evidence was prejudicial. The estimate of damages by a plaintiff and his attorney, made little more than two months after an injury, could hardly be of persuasive importance, and the verdict rendered certainly does not reflect any inflation by reason of the omission of this evidence.

■ Next, counsel urge error in admitting evidence of the net earnings of Nichols Equipment Company, the corporation organized by plaintiff in 1960. These were shown to be as follows: 1962—$326.31; 1963—$5,295.94; 1964 (through July)—a *loss* of $6,002.90. Objection was made that the court should only permit evidence of the earnings of plaintiff personally. In the years just enumerated plaintiff was drawing compensation from that company in the amounts stated previously. Plaintiff's theory was that, it being largely a one-man company, "What the company earns I earn." Originally the corporation was a party to the suit, seeking recovery for the damage to its car, but it had withdrawn as a party before trial. Defendant says that any loss of earnings by the corporation could not be recovered by the plaintiff individually, and that there was no justification for the evidence. Counsel cite Seymour v. House, Mo., 305 S.W.2d 1, which is not at all decisive on this question. It does indicate that while a loss of business profits (to an individual) is generally too speculative to permit evidence thereof as an item of special damage, nevertheless, in those situations where the element of personal service predominates, the evidence may be shown, merely as an *aid* in determining the pecuniary value of plaintiff's loss of time in connection with the supposed impairment of his earning capacity. The evidence in our case involved a corporation. On the whole, we think that the evidence here was inadmissible, but actually it tended to prove so little concerning plaintiff's earning capacity in a newly established business, and it was so inconsistent within itself (establishing a substantial profit for 1963, after the accident, and a loss for 1964) that it could not possibly have resulted in any substantial prejudice to the defendant. Such a verdict as this could be sustained by evidence of moderate pain, the inconveniences suffered, and a limitation of activities, business and personal, past and future. Of these things there was evidence. And, with all the objections which were made to this evidence, and the colloquy which ensued, the jury could hardly have been misled.

■ The last point made may be taken care of very briefly; counsel insists that the court erred in permitting plaintiff's counsel to argue that the case should have been settled. The theory of the exclusion

of evidence (and argument) concerning settlement negotiations is that such efforts should be encouraged and, if they fail to materialize, a party should not be penalized. Kelsey v. Kelsey, Mo.App., 329 S.W.2d 272. The situation here is in *reverse*. There were no negotiations for settlement and plaintiff's counsel merely commented that this was the kind of case that should have been settled. Therein, if any inference was to be drawn, it would seem that he weakened his tactical position, and the defendant could not complain. Certainly there was no prejudice to defendant. See, generally, Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348, 352–353.

The trial court considered very carefully both motions for new trial. We conclude that it acted well within its discretionary limits in overruling both. On plaintiff's appeal, and on defendant's appeal, the judgment is affirmed.

All of the Judges concur.