Wallis E. HODGES et ux., Plaintiffs-Respondents,

v.

Edna JOHNSON, Defendant-Appellant.

No. 8646.

Springfield Court of Appeals.

Missouri.

July 18, 1967.

Remittitur Filed July 25, 1967.

· Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendant-appellant.

Sam F. Hamra, Jr., Springfield, for plaintiffs-respondents.

TITUS, Judge.

This appeal poses but two complaints: (1) the Greene County Circuit Court erred

in permitting improper argument by plaintiffs' counsel, and (2) the verdicts are excessive. Only eight months elapsed from the November 24, 1965, automobile accident until the jury awarded Wallis E. Hodges $10,000 and his wife, Beverly R. Hodges, $2,500 on her derivative action for the loss of her husband's "society, consortium, companionship, love, affection and support." Having profited nothing in the trial court by after-trial motions, defendant positioned her predicament here.

At the time of the casualty Hodges was a twenty-nine year old traveling carpet and rug salesman whose employment afforded him a monthly drawing of $500, plus commissions and expenses. The record is wholly silent as to the amount of commissions, if any, plaintiff may have earned over the drawing account either before or after the accident. Before the collision, and when not traveling, Hodges was said to be a cheerful helpmate to his wife (who also worked) in performing household chores such as window washing, operating the vacuum sweeper and hanging and unhanging laundry. He was depicted as an avid shrub trimmer, yard tender, golfer, water skier, and bowler who enjoyed good health. The Hodges' marital life was described as "very active." They had three children.

Mr. Hodges was hospitalized following the accident until December 20, 1965, and returned to employment on January 31, 1966. The collision produced two or three fractured ribs (the doctors not in accord) that "were in good apposition * * * [and] healed [uneventfully] by normal intent or callus formation [without] misalignment." Chest and back pains were experienced "for a couple of months after I got out of the hospital and it has since gradually went out." A cut to the right forearm one-half inch proximal to the ulnar styloid healed without infection, and one of plaintiff's doctors said, "[I]t is possible * * * he can have some residual pain there from an impinged [cutaneous] nerve or from strictly the scar formation." Another physician

agreed the affected nerves would "take care of themselves over a period of six months to a year." Hodges' doctors testified he had also experienced "just a simple neck strain" or "cervical sprain * * * localized primarily to this one ligament attachment * * * at the juncture of the neck and chest segments." No doctor testified to any permanent physical disability although it was said Hodges will "have some residual soreness * * * for awhile" or his condition "could [last] * * * for an indefinite period." But for the chest films evidencing fractured ribs, all x-rays were negative.

There was no testimony or claim Hodges lost any income because of the accident. His hospital and medical charges were $1,353.

When released from the hospital Hodges was "much improved" although "at that time I was unable to do anything, just loafed * * * around the house." The doctor treating plaintiff in the hospital saw him after discharge on December 27, 1965, and January 10, January 31, and March 14, 1966. Prior to Hodges' final visit to this physician he had been released "to full duty" and when last seen plaintiff "had a few aches and pains but the primary complaint was to the right chest * * * and wrist." This doctor "could find nothing physically wrong with him that would keep him from performing his normal activities" and no cervical collar was ever prescribed because "there was no need for a collar, no, sir."

Hodges consulted with another doctor on March 25, 1966. "His chief complaints at the time * * * were of aching discomfort in the lower portion of his neck." No cervical muscle spasm was evident, the neurological examination was negative, and "he had near normal range of motion of his neck." Plaintiff complained of pain on extreme neck movements, was given medication, a novocaine-cortisone injection "around the spinus processes of the * * * 7th cervical and 1st thoracic vertebrae,"

and "a neck support to splint and rest his neck." He again visited this doctor May 2, May 13 and July 22, 1966. "The patient has improved slightly as of the time of my [last] examination and I'm not sure how much he will continue to improve." Between June 8 and July 1, 1966, plaintiff received five treatments from a chiropractor who "worked on my shoulder area and again down into my back and she laid me on my right side and worked in my neck."

Plaintiff wore the neck collar "steady * * * for a period of two months" and thereafter when driving "any distance * * * and when I'm tired." Hodges testified that because of his injuries the bowling "was terminated;" "I've hired a neighbor boy to do this [yard] work;" housework has ceased, and sports participation is at a bare minimum, all "due to this hurting and pain in my shoulders and neck." After returning to work and continuing up to trial time, Hodges said he deferred from carrying his rug and carpet sample albums (weighing three to twenty pounds) from his automobile into a customer's store because doing so "was putting a strain on * * * my shoulders and my neck, and maybe a day or two after that I'd feel like an old man around ninety years old." The only effect this had on his work was that "occasionally [he] would have a customer come out to the car to look at the samples." In describing her post-accident husband, Mrs. Hodges said, "[H]e's tired most of the time, he's irritable with the children, and he's nervous." A neighbor observed plaintiff to be "very sullen and rather crabby."

In considering defendant's first complaint of error, we quote that portion of the closing argument to which the point is directed:

"[Plaintiffs' counsel]: Count One is Wallis Hodges' claim for his injuries that he has sustained and his medical and hospital bills that he has incurred in the past and has to incur in the future. This is for his permanent physical disability. * * * This is for his loss of earning

an income and earning capacity in the future. He is a commission salesman. How much is he going to lose the rest of his life because he has to get buyers to come out to his car to look at samples.

"[Defendant's counsel]: If Your Honor please, I object to that argument as purely speculative, there's no evidence in this case at all in regard to that.

"The Court: Sustained. I don't believe there's any evidence * * * of a permanent—it was indefinite. * * * I mean the disability.

"[Plaintiffs' counsel]: On the disability, [the doctor] did state that it would be for an indefinite period of time.

"The Court: He said indefinite?

"[Plaintiffs' counsel]: That's right.

"The Court: You can so argue.

"[Defendant's counsel]: I'm also objecting that there was no evidence of loss of commissions or anything after he returned to work.

"The Court: He was speaking in terms of earning capacity, I believe * * * Proceed * * *

"[Plaintiffs' counsel]: This is for his loss of earning capacity in the future. * * * This man's permanently disabled and you know he is. * * *"

No doctor testified Hodges would require *future* medical attention or *future* hospital care. As apparent from the colloquy, the trial court understood and plaintiffs' counsel tacitly admitted there was no evidence Hodges had incurred any "permanent physical disability." No claim was made plaintiff had lost any earnings or commissions. In fact, no evidence was tendered as to the amount of commissions Hodges had ever earned or received. The trial court properly sustained defendant's first objection to the argument, and, as this was the only relief requested, defendant stands satisfied in full. The dialogue that followed, how-

ever, seemingly terminated in the court's permission and approval for counsel to argue and imply plaintiff had suffered loss of earning capacity.

■ It is axiomatic counsel should neither argue nor draw inferences from matters not in evidence and that a trial court errs in permitting such a discourse.[1] Evidence of substantial personal injuries or even of permanent injury is not sufficient of itself to show loss or impairment of earning capacity, past or future.[2] Recovery for loss of earning capacity is not to be permitted when formed from speculation and conjecture, but only when established with reasonable certainty.[3]

■ Plaintiffs, backed by cited authority, remind us counsel is to be permitted wide latitude in argument and the breadth of the berth afforded is largely a matter for determination by the trial court in the exercise of sound discretion. We agree with these general pronouncements and the doctrine of due deference to be afforded the trial court in discretionary subjects. Nevertheless, we are not obliged to blindly ingest such expressions as anodynes to completely assuage the pain of errors committed by court and counsel. State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 26.

■ Whether the statement, "I'm also objecting that there was no evidence of loss of * * * anything after he returned to work," was sufficiently specific to constitute an objection to any certain part of the argument, we need not decide. Cf., Fennell v. Illinois Central Railroad Company, Mo.App., 383 S.W.2d 301, 307(7). After the trial court made it clear plaintiffs' counsel would be permitted to argue concerning loss of earning capacity, defendant made no objection, general or specific, to either the court's remark or the subsequent argument of counsel. Previously cited authority and the record in this case could indicate error on the part of both court and counsel in permitting and making argument relative to impairment of earning capacity. Clearly the claim "this man's permanently disabled and you know he is," was not proper under the evidence. However, the alleged misconduct of court or counsel during trial must be called to the attention of the trial court, and the trial court must, by request for instant action and ruling be given an opportunity to grant relief. By having in no way demurred to the court's remark and ruling or to the latter part of the argument, we deem defendant's objection thereto to have been waived.[4]

■ While an appellate court may, as a matter of law, determine whether a verdict under review is in excess of the maximum amount which the evidence in the case would support (Hart v. City of Butler, Mo., 393 S.W.2d 568, 580 [19]; Turner v. Yellow Cab Company of Springfield, Mo.App., 361 S.W.2d 149, 157 [9], and cases there cited), the hackneyed homily persists that each case depends upon its own particular facts. Extensive research and common experience reveal that one reason, among many, two cases exactly alike may never

---

1. Nichols v. Blake, Mo., 395 S.W.2d 136, 141(6); Wartenbe v. Car-Anth Manufacturing and Supply Co., Mo.App., 362 S. W.2d 54, 60(4); Faught v. Washam, Mo., 329 S.W.2d 588, 601.

2. Waymire v. Carter, Mo.App., 366 S.W. 2d 74, 79(3); Moss v. Mindlin's, Inc., Mo., 301 S.W.2d 761, 769; 25 C.J.S. Damages § 40, p. 727, n. 55.5; 22 Am. Jur.2d, Damages § 93, pp. 136–137.

3. Haley v. Byers Transportation Co., Mo., 414 S.W.2d 777, 782(5); Nichols v. Blake, supra, 395 S.W.2d at 140(3); Honeycutt v. Wabash Railroad Company, Mo.App., 313 S.W.2d 214, 217–218(4) (subsequent appeal Mo., 337 S.W.2d 50); Seymour v. House, Mo., 305 S.W.2d 1, 3(2).

4. Minor v. Lillard, Mo., 306 S.W.2d 541, 548(12); Sparling v. Hoard, Mo.App., 380 S.W.2d 940, 941(1); Blanford v. St. Louis Public Service Co., Mo., 266 S.W. 2d 718, 721(3); 88 C.J.S. Trial §§ 196c, d, and e, pp. 385–389.

be found is due to the difference in the loquacity of plaintiffs and testifying doctors and the varying preciseness employed by scribes of opinions. Unfortunately no punctilious prescription exists to calculate if a damage suit verdict is excessive. We must, however, afford due regard and careful consideration to the involved injuries and losses; plaintiff's age; plaintiff's diminishing earning capacity, if any, resulting from the injuries; changing economic factors; the amount of compensation as awarded and approved in cases of similar or fairly comparable injuries; loss of income, past and future, if any; the amount of medical and similar expenses incurred and which may reasonably be incurred in the future; the purchasing power of the dollar; and the rule of reasonable uniformity of awards for similar injuries.[5] It likewise behooves us to bear in mind the determination of the amount of damages is primarily for the jury and trial court, that appellate courts exercise caution before interfering with or reducing the size of a verdict (and then only when the amount is manifestly unjust), and that the verdict is to be viewed in the light most favorable to the plaintiff.[6] None the less, the ultimate test of excessiveness is what amount will fairly and reasonably compensate for the injuries sustained. Mantz v. Southwest Freight Lines, Mo., 377 S.W.2d 414, 420; Parlow v. Carson-Union-May-Stern Company, Mo., 310 S.W.2d 877, 885(14).

Subjecting ourselves to the foregoing precepts and guides, we have perused every case cited by the parties and many more, some of which, but by no means all, appear as citations in this opinion. As concerns Count One of the petition and the $10,000 verdict awarded Wallis Hodges, the best comparison we have found is Siemes v. Englehart, Mo.App., 346 S.W.2d 560. The simile is, of course, not wholly accurate for, as will be noted, Siemes' injuries were more serious than those experienced by Hodges. Siemes was injured when his vehicle was struck successively in an intersection by two automobiles. He sustained three fractured ribs and his left lung was partially compressed because of the rib fracture. Also received were injuries to his neck, left shoulder, left arm and left knee. He experienced loss of grip in his left hand, back pains, and numbness in his left arm. At the time of trial (thirteen months after the accident) these injuries and Siemes' complaints thereof persisted, and for almost a year before trial plaintiff was being treated with eight to ten pound cervical traction for an hour three or four times a week. Neurological examination revealed irritation of the nerves on the left side of plaintiff's body which resulted in weakness and sensory changes in that area. Siemes lost seven weeks of work and $889 in wages. His medical expenses were $484, making his "special damages" total $1,373. The verdict for Siemes was $7,000 and characterized by the appellate court as "most substantial for the character of injuries plaintiff sustained."

In comparison with the Siemes case, Hodges' "special damages" amounted to $1,353. Hodges received two or three fractured ribs but they healed without incident, with no "misalignment," and without compression to his lung. Chest and back pains

5. Wolfe v. Harms, Mo., 413 S.W.2d 204, 217; Stephens v. Guffey, Mo., 409 S.W.2d 62, 70(5, 6); Lindsey v. P. J. Hamill Transfer Co., Mo.App., 404 S.W.2d 397, 401(7); McDonald v. Missouri-Kansas-Texas Railroad Co., Mo., 401 S.W.2d 465, 472(13, 14); Moss v. Courtaway, Mo., 400 S.W.2d 160, 163(4); Mahowald v. Garrison, Mo.App., 397 S.W.2d 713, 716; Dean v. Young, Mo., 396 S.W.2d 549, 561 (20); Matta v. Welcher, Mo.App., 387 S.W.2d 265, 275(16); Painter v. Knaus Truck Lines, Inc., Mo., 375 S.W.2d 19, 26–27(8, 9); Salzwedel v. Vassil, Mo.App., 351 S.W.2d 829, 835–836(4–6); Hunter v. St. Louis Southwestern Ry. Co., Mo., 315 S.W.2d 689, 697(10).

6. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, 111(10); Chapman v. King, Mo.App., 396 S.W.2d 29, 34(1); Turner v. Yellow Cab Company of Springfield, supra, 361 S.W.2d at 157(10).

experienced had "gradually went out," whereas Siemes was still having these pains (and others) thirteen months after the accident and was still undergoing active treatment three or four times a week. Hodges' neurological examination was negative while that of Siemes was positive for strength and sensory changes. Hodges lost no grip in his hand and his chief complaints at trial related to his "shoulders and neck" which his own doctors ascribed to "just a simple neck injury," or "cervical strain." There was no evidence Hodges sustained any permanent physical disability.

In consideration of the many cases reviewed in addition to Siemes, supra, and affording Mr. Hodges the benefit of his best evidence and the time differential between the date of his accident and that experienced by Siemes and the plaintiffs in the other authorities read, we view a verdict in the amount of $6,500 to be liberal, but if awarded by a jury it would be permitted to stand.

Until the Supreme Court of Missouri en Banc, with three judges dissenting, determined otherwise in Novak v. Kansas City Transit, Inc. (March 1963), 365 S.W.2d 539, Mrs. Hodges had no right in this state under then existing case law to maintain an action for damages for the alleged loss of her husband's "society, consortium, companionship, love, affection and support." We are, consequently, hampered by a dearth of Missouri authority on how to gauge a wife's damages, if any, in a derivative action especially where, as here, defendant also complains of the excessiveness of the verdict given the wife. In overriding the argument a wife's consortium action would permit double recovery of damages and overlapping of benefits, the Novak opinion said at l. c. 544: "Such result may be avoided by delineating accurately the items properly includable in the husband's damages and by permitting the wife in her separate action to recover for the loss of only those elements of consortium which, under the facts of a particular case, *represent separate and distinct loses to her.*" (Our emphasis).

The majority opinion in Shepherd v. Consumers Cooperative Association, Mo. (en banc), 384 S.W.2d 635, 639–640, undertook to provide an example of what is meant by the "separate and distinct" losses to the wife and the "other rights to which a wife is entitled" by repeating the wife's petition as quoted in Bernhardt v. Perry, 276 Mo. 612, 208 S.W.2d 462, 464, 13 A.L.R. 1320. By Count Two of the petition herein, Mrs. Hodges alleged damages only for "the loss of the society, consortium, companionship, love, affection and support" of her husband which approximately resulted from his injuries. With the exception of those quoted, none of the allegations of the Bernhardt petition appear in Mrs. Hodges' pleadings. Furthermore, there was no evidence in this case to have supported such averments had they been made.

"* * * [O]ne element of consortium [is] the loss of support. Consortium, however, includes, in addition to material services, elements of companionship, felicity and sexual intercourse, all welded into a conceptualist unity." Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 891, 86 A.L.R.2d 1184. Consortium as a right of the marital relation, is also said to include society, conjugal fellowship, love, affection and other similar terms, all of which are synonyms one for the other. 26 Am.Jur., Husband and Wife, §§ 5–8, pp. 634–636; 41 C.J.S. Husband and Wife § 11, p. 402; and the numerous cases cited in these authorities. One authority correctly notes the meaning of consortium is vague and indefinite, and the various attempts at defining it only aggravate its nebulosity.

A wife's claim for loss of support of necessity stems from the husband's loss of income and impairment of earning capacity. Many cases recognize that to permit both husband and wife to recover for these items would amount to awarding double damages. The Supreme Court of Illinois in Dini,

supra, says "Any conceivable double recovery, however, can be obviated by deducting from the computation of damages in the consortium action any compensation given her husband in his action for the impairment of his ability to support," although in the next breath it observes "the concept [that] consortium is capable of dismemberment into material services and sentimental services * * * is but a theoretician's boast." The dissenting opinion in Deshotel v. Atchison, Topeka & Santa Fe Railway Co., 50 Cal.2d 664, 328 P.2d 449, 454, says, "[I]t is a simple matter to determine the damages to the wife's consortium in exactly the same way as those of the husband are measured in a similar action and subtract therefrom the value of any impairment of his duty of support." The writer in Deshotel further noted "Simple mathematics will suffice to set the proper quantum." The problem which immediately comes to mind is how can an appellate court on review ascertain what portion of a lump sum verdict constitutes the jury's award to the husband for his loss of wages, impairment of earning capacity and ability to support. Also, how is an appellate court to know what part, if any, of a lump sum awarded the wife in her derivative action was given or intended as damages for loss of support? It would seem these amounts would necessarily need to be known before a deduction by "simple mathematics" could be made to arrive at the quantum to which the wife is rightfully entitled. Fortunately we need not undertake to answer these questions for in the instant matter Mr. Hodges lost no income and the evidence did not support a claim for impairment of his earning capacity. At the risk of being branded "theoreticians," in our view loss of financial support is not an element of damages in Mrs. Hodges' consortium claim.

We additionally observe no claim was made or proof offered that Mrs. Hodges has been deprived of her "legally sanctioned and morally proper privilege of copulation or procreation." Yonner v. Adams, 3 Storey 229, 53 Del. 229, 167 A.2d 717, 728. There was no showing Mr. Hodges' love and affection for his wife has waned or diminished. As suggested in the Bernhardt v. Perry petition, supra, there was no averment or proof Mrs. Hodges administered any nursing care or services unto her husband other than those usually performed by and expected of a wife, or that she personally suffered any personal physical pain or disability because of her husband's injuries. We cannot, of course, deny the news of the accident and of Mr. Hodges being injured did not cause Mrs. Hodges some temporary distress and anguish. Mrs. Hodges was not out-of-pocket any sums because of her husband's inability to do yard or housework or for his medical and hospital services, which are items often employed to gauge the propriety of a verdict given a husband in his derivative action. Take v. Orth, Mo.App., 395 S.W.2d 270, 276(10, 11); Hopkins v. St. Louis Public Service Company, Mo.App., 382 S.W.2d 442, 450–451(16).

No doubt exists that males have depreciated and females appreciated since the time the edict was given Eve that "he [Adam] shall rule over thee," and subsequent to King Lemuel's observation a good wife "riseth also while it is yet night and giveth meat to her household * * * She layeth her hand to the spindle and her hands hold the distaff." Paul too underestimated the power of women when he described them as "keepers at home [and] obedient to their own husbands." The surrender flag of male supremacy was long ago espied by our Supreme Court in Clow v. Chapman, 125 Mo. 101, 28 S.W. 328, 329–330, 26 L.R.A. 412, when it ceded that under "the statute law of this state" a wife "is made to stand out in bold relief * * * [and] placed upon an equality with her husband." Bowing to this and other authority, we acknowledge but, through understandable male pride, do not necessarily rule a wife's right to her husband's services under a claim for loss of consortium may also include her right to assist-

ance with household chores. Mrs. Hodges testified that before the accident her husband "lifted baskets of clothes for me, which I didn't do \* \* \* he would run the sweeper quite a lot, since I worked I had a lot of things to do, and he helped me with most of the housework, and he helped me with the children." Other elements of her husband's consortium, if any, which she might have lost were not delineated. It is fortunate for the Hodges the husband sustained no permanent physical disability, so we may assume Mrs. Hodges' loss also will be but for an indefinite period.

There should be some reasonable relationship between the size of a verdict awarded in a consortium action and that given the injured spouse so that each will be congruent with the particular facts and circumstances involved. In the usual case, as here, the damages to the uninjured spouse are necessarily considerably less than those suffered by the one injured and who actually incurred the expense of involved special damages. While it does not necessarily follow a remittitur will automatically be required in a derivative action when a reduction has been made in the principal suit, in consideration of the peculiar aspects of this case and the above noted considerations, we are of the opinion the sum of $1,500 is the maximum amount of damages permissible and that the verdict in favor of Mrs. Hodges is excessive by the sum of $1,000.

Defendant does not contend the verdicts were excessive because of the jury's bias, prejudice or misconduct. Therefore, the errors therein may be corrected by remittitur. Knight v. Swift and Company, Mo., 338 S.W.2d 795, 801(11). Defendant also fails to claim jury error in its determination of liability. Therefore, if within fifteen days after the filing of this opinion, plaintiff Wallis E. Hodges will enter in this court a remittitur of $3,500, that part of the judgment on Count One of the petition will stand affirmed in the sum of $6,500 as of the date of the

original judgment, otherwise that part of the judgment pertaining to Count One of plaintiffs' petition is reversed and the cause remanded for a new trial on the issue of damages only. If within fifteen days after the filing of this opinion, plaintiff Beverly R. Hodges will enter in this court a remittitur of $1,000, that part of the judgment on Count Two of plaintiffs' petition will stand affirmed in the sum of $1,500 as of the date of the original judgment, otherwise that part of the judgment pertaining to Count Two of plaintiffs' petition is reversed and the cause remanded for a new trial on the issue of damages only.

STONE, P. J., and HOGAN, J., concur.