# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1075

_____

Paula Kingman; Calvin Kingman

*Plaintiffs - Appellees*

v.

Dillard's, Inc.

*Defendant - Appellant*

_____

No. 12-1091

_____

Paula Kingman; Calvin Kingman

*Plaintiffs - Appellants*

v.

Dillard's, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri – Kansas City

_____

Submitted: January 16, 2013
Filed: July 25, 2013

_____

Before BYE, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

This matter is before the Court after we remanded the case for reconsideration of a damages award. On remand, the district court[1] reduced the award amount by seventy-five percent, and the parties cross-appealed. For the reasons set forth below, we affirm the district court's reduced damages award.

## I.

### A.

Paula Kingman was injured in November 2004 when a clothing rack broke free from a wall at a Dillard's, Inc. ("Dillard's") department store in Kansas City, Missouri, and struck her right shoulder. The full extent of Paula's injuries are set forth in our prior opinion pertaining to this case. Kingman v. Dillard's, Inc., 643 F.3d 607, 610–11 (8th Cir. 2011) ("Kingman II"). As is relevant for this appeal, Paula's injuries restrict the amount of weight that she can lift with her right shoulder to five to ten pounds. Paula sued Dillard's for her injuries and, after a bench trial, the district court awarded her $186,388 in damages.

Paula's husband, Calvin Kingman (together with Paula, "the Kingmans"), also sued Dillard's for loss of consortium. Calvin weighs 250–300 pounds and suffers from quadriplegia as a result of a car accident in 1982. Calvin relies primarily on Paula to assist him with bathing, dressing, feeding, and relieving himself. Paula is

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

-2-

also responsible for moving Calvin by hoisting, pushing, or pulling him to help him avoid developing pressure sores. The district court awarded Calvin $1 million in consortium damages to cover the cost of professional healthcare services for fifteen years until Paula reaches age sixty-two. The court reasoned that after that time, Paula could no longer be expected to move Calvin, even absent her shoulder injuries.

Dillard's appealed the district court's damages awards to the Kingmans. We affirmed Paula's award, id. at 614, but vacated Calvin's award and remanded the case for reconsideration, id. at 618. The crux of our decision to vacate and remand was two-fold. First, we expressed reservations regarding whether the services and care that Paula provided to Calvin are compensable as consortium under Missouri law. See id. at 615 ("No Missouri court has ever allowed a spouse to recover on a consortium claim for life-long professional nursing care."); id. at 616 ("[P]rofessional nursing care is not included in the ordinary services that Missouri expects a wife to provide to her husband."). Second, we were concerned that the amount of the consortium award to Calvin greatly exceeded the amount of the award to Paula, who was the principal injured party. See id. at 617 ("[W]e do not believe that [Missouri] precedent foreshadows a disproportionately large consortium claim of the sort awarded to Calvin by the district court."); id. ("[W]e think it unlikely that, absent legislative action, the Supreme Court of Missouri would expand the concept of consortium to include a claim for lifetime professional nursing services that vastly exceeds the underlying award to the injured spouse.").

On remand, the district court reduced Calvin's award to $250,000. Kingman v. Dillard's, Inc., 835 F. Supp. 2d 732, 736 (W.D. Mo. 2011) ("Kingman III"). The district court reasoned that our "repeated reference to *professional* nursing services as an inappropriate source of compensation was the limitation that must be followed." Id. at 735 (emphasis added). The district court further acknowledged that Paula should not be relieved of performing those tasks of which she remains capable and that she performed prior to her shoulder injuries (*e.g.*, bathing, feeding, and changing

-3-

bedpans). Rather, the consortium award should cover only the "heavy lifting and adjustment" of Calvin that Paula can no longer perform due to the weight restriction on her shoulder. Id. at 736.

Dillard's and the Kingmans now cross-appeal Calvin's $250,000 award. The parties argue over two main points. First, the parties dispute whether the district court erred by including Paula's "heavy lifting and adjustment" as services encompassed by the notion of consortium. Dillard's contends that "medical/nursing healthcare services ordinarily performed by professionals do not constitute the type of spousal duties and obligations that are normally expected in the maintenance of a household, and therefore . . . [are] not compensable as a loss of consortium." (Internal quotation marks omitted.) The Kingmans, on the other hand, argue that "in the context of a loss of services claim, the word 'services' implies any and all assistance the wife is expected to provide [to] her husband under the particular circumstances in which they are placed." (Internal quotation marks added.)

Second, assuming that Paula's "heavy lifting and adjustment" are properly within the scope of consortium, the parties argue over the award amount and whether and to what extent Missouri law requires proportionality between the damages awards to a principal injured spouse and a consortium spouse. Dillard's contends that "even if Calvin had established his right to some relief," the award of $250,000 is "grossly excessive." The Kingmans offer three alternative damages theories. First, the Kingmans assert that the original award of $1 million, "while substantial," was in no way a "windfall" and serves only "to make [Calvin] whole," and thus should be reinstated. Next, the Kingmans urge this Court to treble Paula's damages amount and award $559,164 to Calvin for his loss of consortium. Finally, the Kingmans argue for affirmance of the district court's $250,000 award, claiming that the amount "is fully within the parameters" of our prior opinion.

B.

"This court reviews the district court's compensatory damage award for clear error, giving due regard to credibility determinations of the district court."[2] Ledbetter v. Alltel Corporate Servs., Inc., 437 F.3d 717, 725 (8th Cir. 2006); see Hall v. Gus Constr. Co., 842 F.2d 1010, 1017 (8th Cir. 1988) ("In a bench trial, ascertaining the plaintiff's damages is a form of factfinding that can be set aside only if clearly erroneous."). "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." Roemmich v. Eagle Eye Dev., LLC, 526 F.3d 343, 353 (8th Cir. 2008) (citation and internal quotation marks omitted).

Because this case is before us based on diversity of citizenship, "we apply the substantive law that would be applied by a Missouri state court." BancorpSouth Bank v. Hazelwood Logistics Ctr., LLC, 706 F.3d 888, 893 (8th Cir. 2013).

---

[2]Dillard's argues for *de novo* review. Dillard's asserts that the question before this Court is not strictly a review of the amount of Calvin's new damages award, but rather whether the district court complied with this Court's mandate that Calvin's award not exceed Paula's award. See United States v. Castellanos, 608 F.3d 1010, 1016–17 (8th Cir. 2010) (explaining the law-of-the-case doctrine). Kingman II, however, left open the question of the proper amount of Calvin's damages award, including whether and to what extent his award could exceed Paula's award. See 643 F.3d at 618 ("[A]n invalid spouse *might* be entitled to a greater recovery than a healthy spouse *if* his injured wife had previously been undertaking a greater share of household services that are encompassed by the notion of consortium." (emphases added)); id. ("[W]e predict that the Supreme Court of Missouri would permit a higher consortium award [than an injured spouse's award] when, as here, the uninjured spouse is an invalid."). Thus, any "mandate" handed down previously was open-ended in view of the particular facts of the case, and the district court's decision to award Calvin greater damages than Paula on remand is not *per se* disobedient to this Court's prior instruction.

II.

Our analysis proceeds in three phases. We first consider the question of whether the "heavy lifting and adjustment" that Paula performed before her shoulder injury are encompassed by the notion of consortium under Missouri law. Answering this question in the affirmative, we turn next to the question of whether Calvin's damages award on remand "vastly exceeds" Paula's damages award and is therefore inconsistent with our prior opinion and prediction of how the Supreme Court of Missouri would rule. See Kingman II, 643 F.3d at 617. Determining that a $250,000 consortium award to Calvin does not, in our view, violate Missouri law, we then turn to the issue of whether the award amount is supported by the record and the specific facts of this case.

A.

As Missouri courts have recognized,

> [w]hen a married person is injured, two causes of action arise: one accrues to the injured person for the injuries suffered directly by him or her, and the other accrues to the injured person's spouse for damages suffered as a result of the loss of the injured person's services, society, companionship, and sexual relations (loss of consortium).

Thompson v. Brown & Williamson Tobacco Corp., 207 S.W.3d 76, 112–13 (Mo. Ct. App. 2006) (citation and internal quotation marks omitted). Loss of consortium encompasses services that the injured spouse once previously performed for the consortium spouse but is no longer able to perform after the injury, see, e.g., Gooch v. Avsco, Inc., 340 S.W.2d 665, 669–70 (Mo. 1960) (affirming consortium award to husband because injured wife no longer able to perform housework and "wifely duties and obligations"), as well as new services that the consortium spouse must take on for

-6-

the injured spouse that, prior to the injury, the consortium spouse was not required to perform, see, e.g., Helming v. Dulle, 441 S.W.2d 350, 354–55 (Mo. 1969) (husband's injuries required wife to take on "varied and sundry duties" not previously performed, including a second job).  We note that this case is akin to the set of circumstances in Gooch in that prior to her injury Paula was able to move and adjust Calvin, but she is now no longer able due to the limited weight that she can lift with her right shoulder.  However, because the dispute in this case centers around the nature and character of the duties enveloped in the notion of consortium, we are not concerned with the context in which the concept arises.

With this framework in mind, we turn first to the language of our prior opinion and then to the case law regarding loss of consortium.

1.

In our prior opinion, we stated that "[n]o Missouri court has ever allowed a spouse to recover on a consortium claim for life-long professional nursing care." Kingman II, 643 F.3d at 615.  Dillard's argues that "professional nursing care" refers to services that "are customarily performed by career medical personnel who are paid for their services—and not traditionally by one's spouse," and that "'lifting and adjusting' . . . are the precise types of professionally-administered healthcare activities that . . . are not traditional household or domestic services encompassed by consortium."  Assuming, *arguendo*, that Dillard's is correct in its characterization of "heavy lifting and adjustment," its argument that such services should be *per se* excluded from Calvin's consortium claim still fails for two reasons.

First, while "heavy lifting and adjustment" may be performed by home health aids, it is also the type of assistance that a spouse or child or layperson can provide. And in fact, the parties do not dispute that prior to the November 2004 incident at Dillard's, Paula—not a third-party aid or in-home caretaker—had been responsible for

lifting and adjusting Calvin. The district court's first order makes this point clear. See Kingman v. Dillard's, Inc., No. 06-0907-CV-W-HFS, 2010 WL 2710716, at *3 (W.D. Mo. July 7, 2010) ("Kingman I") (stating that prior to her shoulder injury, "Paula was doing the work of two [caregivers] (with a hoist)"). These tasks thus had been part of Paula's "wifely duties and obligations" for more than twenty years following the 1982 accident that rendered Calvin a quadriplegic. See Gooch, 340 S.W.2d at 669. Second, although we noted previously that "professional nursing care is not included in the *ordinary* services that Missouri expects a wife to provide to her husband," Kingman II, 643 F.3d at 616 (emphasis added), we recognized that "[t]o be sure, this is not the usual case," id. at 617, and that "Calvin's invalid status and Paula's former role as his primary care-giver are not entirely irrelevant to Calvin's loss-of-consortium claim," id. at 618. Thus, our prior opinion did not categorically exclude "heavy lifting and adjustment" from the scope of consortium simply because similar tasks might be performed by paid healthcare professionals.

Whether those services are embodied in the concept of consortium, however, is determined by Missouri case law, which is where we turn our attention now.

2.

In Helming, an injured husband's wife sued for loss of consortium after her husband was hospitalized because he "severely injured" his hands on the defendant's machinery. 441 S.W.2d at 351–52. The Helming court noted that "[a]fter [the husband's] first discharge from the hospital, his both [sic] hands were bandaged and his wife was required to assist him when he ate meals, she shaved him and she buttoned his clothing. [The husband's] handicap still necessitates some services of this character by [his] wife . . . ." Id. at 354–55. The court affirmed a $10,000 award to the wife for loss of consortium, stating that "these varied and sundry duties now fall upon the wife and constitute a disruptive influence in the sphere of family and social life between the parties." Id. at 355.

Later, in Pretre v. United States, 531 F. Supp. 931 (E.D. Mo. 1981), a federal district court applying Missouri law reached a similar conclusion. In Pretre, a husband was infected with swine flu and hospitalized for five months. During this time, his wife "visited the hospital every day, for about 10 hours daily. She helped care for [her husband], doing such tasks as helping to feed him, emptying bed pans, and helping with his physical therapy." Id. at 932. As a result of the flu, the husband contracted a syndrome that caused him to suffer from several permanent negative side effects, including a condition that affected blood circulation in his legs and "render[ed] him more susceptible to leg ulcers." Id. at 933. The wife sued for loss of consortium. The district court did not award consortium damages to the wife for her in-hospital care of her husband because the many tasks that she performed were merely duplicative of the services that normal hospital nursing care would cover. See id. at 936 ("To award [the wife] the wages of a nurse's aid for the period she spent in the hospital would amount to a finding that the nursing care provided by [the hospital] was inadequate . . . ."). The court did, however, award consortium damages to the wife for the care of her husband after he was released from the hospital. In doing so, the court noted the "physical burdens placed upon [the wife] by [her husband's] weakness following his discharge from the hospital," id. at 936–37, including that her husband needed assistance when showering upon his return home, id. at 932–33.

Both Helming and Pretre are cases in which the consortium spouse was forced to take on additional duties, whereas here the consortium spouse (Calvin) lost a service (lifting and adjusting) that the injured spouse (Paula) previously provided. As we noted earlier, however, this distinction does not diminish the *nature and character* of the services at issue. Health and hygiene services such as assisting a spouse when showering or shaving are analogous to the lifting and adjusting that Calvin requires to avoid developing pressure sores. Accordingly, in our view, Missouri law includes Paula's "heavy lifting and adjustment" in the notion of consortium. See Riggs v. Metcalf, 315 S.W.2d 791, 795 (Mo. 1958) ("[T]he word services 'implies whatever of aid, assistance, comfort, and society the wife would be expected to render to or bestow

-9-

upon her husband, *under the circumstances and in the condition in which they may be placed*, whatever those may be.'" (emphasis added) (quoting Womach v. City of St. Joseph, 100 S.W. 443, 448 (Mo. 1907))); see also Stahlheber v. Am. Cyanamid Co., 451 S.W.2d 48, 63–64 (Mo. 1970) (suggesting that "future care" of an invalid wife "who would require constant attention around the clock" be taken into account when calculating her husband's consortium damages).

Dillard's argues that Wright v. Standard Oil Co., 470 F.2d 1280 (5th Cir. 1972), compels a different result. In Wright, the Fifth Circuit allowed a wife–mother to recover damages for the care that she provided to her son after her son was rendered a paraplegic because of an accident. Id. at 1282, 1293. Notably, this recovery was not based on loss of consortium, but rather was grounded on a separate legal interest. Id. The wife's husband and boy's father, however, tried to claim his wife's care services to their son as his own loss of consortium. Id. at 1286. The Wright court rejected this claim: "[T]he argument that [the wife's] services [to their child] belong to her husband falls of its own weight. . . . Her activities cannot be characterized as normal household and domestic duties which by entering into the marriage she impliedly agreed to perform without compensation." Id. at 1292–93.

Dillard's contends that Wright's holding regarding the husband's loss-of-consortium claim is based on the *type* of services at issue, rather than the *recipient* of the services. We disagree. The husband in Wright was not the direct beneficiary of his wife's services to their child and thus was forced to rely on a conduit theory of consortium. By contrast, Calvin is the direct beneficiary of Paula's lifting and adjusting. The Wright court recognized this critical distinction when it stated that "the general principle that a husband is entitled to his wife's services . . . [is based on] the reciprocity of the marital relationship . . . . [and] should not be extended to govern situations involving the husband–wife *vis-a-vis* third parties." Id. at 1293 n.20. Regardless of Wright's holding, we note that the Fifth Circuit was applying

Mississippi law, not Missouri law. See id. at 1285. Dillard's reliance on Wright is thus misplaced.

For the reasons set forth above, we determine that Paula's "heavy lifting and adjustment" of Calvin is within the realm of services encompassed by the notion of consortium under Missouri law.

B.

The parties make much of the so-called "proportionality" requirement as extracted from our prior opinion. See Kingman II, 643 F.3d at 617 ("[T]he Kingmans have not cited any Missouri authority for the proposition that a consortium award may exceed by a factor of five the damages awarded to the injured spouse. . . . [and] we do not believe that state precedent foreshadows a disproportionately large consortium claim of the sort awarded to Calvin by the district court."). Dillard's argues that "the decision on remand was . . . unfaithful to this Court's 'proportionality' requirement," and "[e]ven if Calvin had established his right to some relief, the award of $250,000 did not comply with this Court's mandate." The Kingmans, on the other hand, argue that the "creation of a 'proportionality' requirement flatly contravenes well-established case law as reflected in Missouri" and, alternatively, if there is such a requirement, an award of $250,000 was well within—and in fact, below—the proper amount owed.

As it relates to an action to recover for personal injury, "[a] consortium claim is a separate, distinct, and personal legal claim, and is derivative only in the sense that it must be occasioned by a spouse's injury." Thompson, 207 S.W.3d at 112 (citation and internal quotation marks omitted). "Settlement of the underlying personal injury claim by the injured spouse does not preclude the other spouse from maintaining an action for loss of consortium against the tortfeasors in a separate suit," id. at 113, and "the failure of one spouse to sue for injuries within the statute of limitations does not bar a suit for loss of consortium that was timely filed," id. at 114 (citation and internal

quotation marks omitted)); see also Bridges v. Van Enters., 992 S.W.2d 322, 325 (Mo. Ct. App. 1999) ("[T]he loss of consortium claim continues to exist even if the injured spouse settles his or her claim for personal injuries. The consortium claim survives independently of the injured spouse's claim." (citing Shepherd v. Consumers Coop. Assoc., 384 S.W.2d 635, 640 (Mo. 1964))).

Despite this separateness, we stated previously that where the injured spouse does maintain a claim for damages, "there 'should be some reasonable relationship between the size of a verdict awarded in a consortium action and that given [to] the injured spouse,' and it would be a highly unusual case in which the consortium award exceeded the damages award to the principal plaintiff." Kingman II, 643 F.3d at 618 (quoting Hodges v. Johnson, 417 S.W.2d 685, 693 (Mo. Ct. App. 1967)). As the Kingmans point out, however, a more complete reading of Hodges tells us that "[t]here should be some reasonable relationship between the size of a verdict awarded in a consortium action and that given the injured spouse *so that each will be congruent with the particular facts and circumstances involved.*" 417 S.W.2d at 693 (emphasis added). Without expressly saying so, our prior opinion recognized the fact-specific nature of a consortium award by noting that "an invalid spouse *might* be entitled to a greater recovery than a healthy spouse *if* his injured wife had previously been undertaking a greater share of household services that are encompassed by the notion of consortium." Kingman II, 643 F.3d at 618 (emphases added). Indeed, "we predict[ed] that the Supreme Court of Missouri would permit a higher consortium award when, as here, the uninjured spouse is an invalid." Id.

In fact, the Supreme Court of Missouri has affirmed a damages award to a consortium spouse that was larger than the award to the principal injured spouse. Gooch, 340 S.W.2d at 670. We note that in Gooch, however, the damages awards were handed down by different juries in different trials. Still, the Supreme Court of Missouri stated that "[t]he fact that one jury awarded a[n] [injured] wife less for her injuries than another jury awarded the [consortium] husband in his separate action for

-12-

expenses and for loss of services and society of his wife, does not, standing alone, tend to substantiate the contention that the husband's verdict and judgment are excessive." Id. (rejecting the defendants' argument to apply a "rule of reasonable uniformity").

Other state courts have permitted awards for loss of consortium that were larger than the awards to the principal injured spouse in certain circumstances as well. In Clark v. Shoaf, a Tennessee appellate court affirmed a jury verdict awarding a consortium spouse an amount one-and-a-half times greater than the injured party's award. 209 S.W.3d 59, 60 (Tenn. Ct. App. 2006). Notably, Clark was decided under the same legal framework that exists in Missouri regarding the relationship between a claim for the principal injury and a corresponding claim for loss of consortium. See id. at 61 ("[An] action for loss of consortium [in Tennessee] is derivative in that it originates from or owes its existence to [the injured party's] claim for personal injuries. However, a loss of consortium claim is separate from the original claim for personal injuries. . . . It is a distinct cause of action." (citations omitted)). The defendant in Clark argued that "the plaintiff seeking damages for loss of consortium must demonstrate some especially great reliance on the plaintiff in the underlying action in order to justify damages in excess of those awarded for the underlying injury." Id. at 62. That is precisely the situation here, where Calvin, a quadriplegic, is entirely dependent upon Paula for care. The Clark court found that there was not material evidence to refute the jury's award to the consortium spouse, and affirmed the consortium verdict of $30,000 (compared to $20,000 to the injured spouse). Id. at 61–62.

In sum, our prior opinion did not foreclose awarding a consortium spouse a higher damages award. We observed only that "state precedent [would not] foreshadow[] a *disproportionately large* consortium claim," such as the $1 million originally awarded to Calvin. Kingman II, 643 F.3d at 617 (emphasis added); see id. ("[W]e think it unlikely that, absent legislative action, the Supreme Court of Missouri

would expand the concept of consortium to include a claim for lifetime professional nursing services that *vastly exceeds* the underlying award to the injured spouse." (emphasis added)); id. at 615 ("[W]e agree with Dillard's that current Missouri law does not contemplate an *unlimited* consortium claim of the sort awarded to Calvin by the district court." (emphasis added)).  The district court properly understood this limitation on remand.  See Kingman III, 835 F. Supp. 2d at 735 ("I will avoid an amount *greatly out of line* with the personal injury recovery of Mrs. Kingman." (emphasis added)); id. at 735–36 (characterizing Kingman II as prohibiting "a recovery [for loss of consortium] *greatly in excess* of the recovery by the injured party" (emphasis added)).  Considering the unique circumstances of this case and the impact that Paula's injury has upon Calvin, we hold that the district court's award of $250,000 is not inconsistent with our prior opinion or, in our view, in conflict with Missouri law.  See Kingman II, 643 F.3d at 617 (noting that "the extent of the uninjured spouse's recovery for loss of consortium 'depends, in large measure,' upon the extent of the injured spouses *injuries*"—not the injured spouse's *award* (emphasis added) (quoting State *ex rel.* St. Louis Pub. Serv. Co. v. McMullan, 297 S.W.2d 431, 436 (Mo. 1956) (en banc))).

We turn now to whether there is sufficient evidence in the record to support the specific award amount.

C.

The district court's $250,000 award on remand was premised on the rationale that "[p]aying for professional nursing for two four-hour segments [per day] . . . would relieve Mrs. Kingman of some nursing activities that she is quite capable of performing," and that "[s]upplementary nursing is only needed for heavy lifting and adjustment, with available lifts."  Kingman III, 835 F. Supp. 2d at 736.  The district court recognized that "[t]he compensation for that limited service, if obtainable separately, would be very much less than the full charges for nursing."  Id.

-14-

The Kingmans continue to assert, however, that "*all* of [Calvin's] personal care/hygiene tasks require replacement care or the assistance of a replacement caregiver." This claim is refuted by the Kingmans' own Life Care Plan and Cost Analysis for Paula Kingman ("Life Care Plan"), on which the Kingmans based their damages amounts. The Life Care Plan states plainly that "Mrs. Kingman is . . . able to perform [Calvin's] bowel program" and she "can certainly continue to help [Calvin] with tasks such as medication administration, food preparation and set-up assistance for feeding, and other similar assistance that is less strenuous [on her shoulder]." The only tasks that the record shows that Paula can no longer perform are "assistance with repositioning, transfers, and pressure relief maneuvers that are required multiple times throughout each day."

The Life Care Plan nevertheless calls for an average of ten hours per day of care for Calvin because "[i]t is not feasible or cost effective for certified nurse aides or other attendants to make multiple visits throughout the day to attend to those aspects of care that Mrs. Kingman should avoid doing due to lifting restrictions, pain and shoulder impairment." While we recognize that such a practice may not be ideal, it would, in our view, be a windfall to the Kingmans were Dillard's forced to pay multiple aids to sit idle for long periods of time throughout the day, save for the occasional lifting or adjustment of Calvin. We reiterate that loss of consortium is meant to compensate a spouse only for services *actually* lost or required to be taken up as the result of an injury, and should not in this case relieve Paula of those tasks that she is still capable of performing for Calvin. See Hodges, 417 S.W.2d at 691–93 (reducing consortium spouse's damages in part based on a lack of evidence that certain services or affection were actually diminished as a result of the injury).

Although the district court did not employ any mathematical analysis to arrive at its new consortium award amount, we do not believe that a seventy-five percent reduction in Calvin's award based on the limited services that Paula can no longer perform was clearly erroneous.

-15-

### III.  Conclusion

For the reasons set forth above, we affirm the district court's $250,000 award to Calvin Kingman for loss of consortium.[3]

_____

[3]Prior to oral argument, Dillard's moved to strike Part I of the Kingmans' Reply Brief on the ground that it violates Federal Rule of Appellate Procedure 28.1(c)(4); that motion is granted.  Subsequent to oral argument, the Kingmans moved for leave to file a supplemental letter brief; that motion is denied.