Mr. and Mrs. Frank **HAYMART** et al.,
Respondents,

v.

Mrs. Ben **FREIBERGER**, Appellant.

No. KCD26353.

Missouri Court of Appeals,
Kansas City District.

Aug. 13, 1973.

C. E. Hamilton, Jr., Fulton, for appellant.

David Brydon, James C. Swearengen, Graham & Hawkins, Jefferson City, for respondents.

2. See also: L. Kanowitz, Women and the Law, Univ. of N. Mex. Press, 1969, p. 69.

Before DIXON, C. J., and PRIT-CHARD and SOMERVILLE, JJ.

DIXON, Chief Judge.

Mandamus against the County Superintendent of Schools, by a group of parents as next friend of their several children, to require reassignment of the children to other schools under the provisions of Section 167.121, RSMo 1969, V.A.M.S. No issue as to the propriety of the remedy or procedure is raised. The circuit court issued a peremptory writ of mandamus, the Superintendent appeals, and the judgment below is affirmed.

The Superintendent argues that reassignment is an exercise of discretion and, absent arbitrary, capricious or unreasonable exercise of the discretion, the circuit court erred in the issuance of the writ. Undergirding the argument is the premise that the statute invests the County Superintendent with discretion to make or withhold a reassignment.

The statute in pertinent part reads:

"If any pupil is so located that a school in another district is more accessible, the county superintendent shall assign the pupil to the other district. If it is deemed advisable to assign a pupil to an adjoining county or if a common school district is divided by a county line, then the county superintendent of the county wherein the pupil resides shall make the assignment. . . . The board of directors of the district in which the pupil lives shall pay the tuition of the pupil assigned. The tuition shall not exceed the pro rata cost of instruction." Section 167.121, RSMo 1969.

Determination of the existence and scope of discretion under that statutory language is not required, for the parents have accepted the premise and brief and argue the case on the theory that the withholding of the reassignments was arbitrary, capricious and unreasonable and, therefore, subject to mandamus even if discretionary. Likewise,

tacitly assumed by the parties is the proposition that propriety of the action is to be measured by the totality of the evidence adduced at the hearing on the writ. No effort is made to separate portions of the evidence as relevant to specified children or their desired reassignment. The facts relating to fourteen children and several schools have been argued in a unitary fashion despite the obvious differences. The facts in that perspective were as follows: the parents and the fourteen children were all residents of the South Callaway R-2 School District in Callaway County, and thus the children would have, in normal course, attended the Mokane School; the request was that the children be reassigned to various schools in the adjacent Fulton School District within the same county.

The Mokane bus route was so arranged that these children were at the extremity of the route. Since the route traveled was reversed night and morning, the round trip for all the involved children was the same. The round trip mileage to the Mokane School was in excess of 45 miles. The average time spent on the bus under normal conditions was 45 to 50 minutes each way. Bad weather would increase the total bus time to as much as three hours. The route of the school bus was such that after the involved children were picked up, the bus returned to the city limits of Fulton before proceeding to the Mokane School. Most of the route was a blacktop and gravel road which was curvy, and most of the route was hilly, which had occasioned some narrow escapes from collision with dump trucks. It was approximately 4 to 7 miles to the Fulton Schools for the children involved as opposed to the greater distance to the Mokane School. The distance to the Mokane School created hardships with respect to the children's participation in extracurricular activities since the Mokane School did not provide transportation for those activities. All of the parents involved indicated a willingness to provide transportation to the Fulton

Schools if the Fulton bus routes were not available to them or constituted an impediment to their children attending school in Fulton. The circumstances of the parents indicate that many of them are employed in the Fulton community and would have no difficulty in transporting their children, both for school and extracurricular activities.

The Superintendent testified briefly at the behest of the parents. The substance of her testimony is found in the following:

"MR. BRYDON: All right, let me . . . ask Mrs. Freiberger is it not true that you have refused to reassign*ed* these pupils?

A. Yes, I have.

Q. You have refused to reassign all of the children, . . . Why did you refuse to reassign them?

A. Well, it said the distance and I didn't think it was . . . there would have been enough difference. The bus came to their door and I thought they had . . . and enough things that the vote was 60 to 39 and I didn't think one person ought to sign or change the decision.[1]

\*      \*      \*      \*      \*      \*

Q. Then the election that you spoke of had more influence on you than the mileage involved?

A. Well, if you want to say that, I guess I was . . .

Q. It did influence you, did it not?

A. Well, yes, I believe it did.

Q. The election influenced you, in fact, very strongly, did it not?

A. Well, I just didn't assign them. And I didn't think it was right and I would start a precedent in this county that had no end.

Q. Well, the thing that we're here for this morning though is to determine why you did not assign them.

A. Well, I said the distance, I've answered that."

The only other evidence offered by the Superintendent was the testimony of the school bus contractor who served both school districts. His estimates of time spent on the bus and mileage were somewhat less than those of the parents, but he conceded that his time was based on estimated stops and that he had taken a single mileage figure for all of the children. He inferred in his testimony that because the Fulton buses did not begin the rural routes until 4:15 p. m. the actual time of arrival on the Fulton routes would be the same as the time of arrival of the Mokane school buses. He conceded that he was not aware of the route to be taken by the Fulton bus if these children were served by Fulton. The last witness for the Superintendent was a witness offered on the issue of the economic effect of the transfer on the Mokane District. His testimony was excluded and will later be discussed.

Aside from authority asserting various maxims with respect to the issue of the writ of mandamus, the Superintendent relies upon Red School Dist. No. 1, St. Charles County v. West Alton School Dist. No. 2, St. Charles County, 162 S.W.2d 305 (Mo.App., 1942), for the proposition that the words "more accessible" in this statute included more than mere proximity to the school, and the Opinion of the Attorney General No. 38 issued 4–16–59 which contains an assertion by the Attorney General as to the matters to be taken into account in determining when a school is more accessible under the statute:

"In determining whether one school is more accessible than another, the county superintendent should take into consideration and be guided by such things as distance, road conditions, traffic hazards,

1. The record does not identify this "election" in any way.

as well as the operation of school buses for the transportation of pupils." Opinion of Attorney General number 38.

The cited authority does not support the position of the Superintendent and, if anything, supports the position of the parents. All of the evidence in this case disclosed that in addition to the proximity of the Fulton schools, other factors operated to make the Fulton schools more accessible in the broad sense of that term. Conceding that accessibility is not solely a matter of geography does not alter the fact in this case, that the children's ability to utilize all the services of the school was impaired if they were required to attend the Mokane School and that there was uncontroverted evidence that the road hazard would be greater, not only as to the distance and time involved, but as to the quality of the roads they would travel if they attended the Mokane School. Thus, considering all the factors, the Mokane School is clearly less accessible than the Fulton school. A contrary finding by the Superintendent based on the evidence adduced at the trial would very likely be so clearly arbitrary and capricious that it would be an abuse of discretion and permit the court's intervention on that ground.

■ The Superintendent's own testimony affords an even stronger basis for a finding of an abuse of discretion. Her testimony refers only to "distance," and that factor, considered alone, definitely establishes that the Fulton schools are more accessible. Her admission that she considered it improper to change the pupils because of "elections" clearly demonstrates a failure to exercise a discretion, even under the broadest possible definition of "accessible." The failure to reassign cannot be supported on the ground of a discretion lawfully exercised and must be held to be arbitrary, capricious and unreasonable.

The Superintendent also asserts error in the trial court's refusal to admit certain evidence. The offer of proof on the objection reflects an attempt to demonstrate that the transfer of fourteen students and the consequent payment of tuition by Mokane to Fulton will diminish the ability of Mokane to provide educational facilities for the entire district. The objection was that this evidence was irrelevant and immaterial. Evidence to be relevant must establish a fact which tends to prove a fact in issue. The offered fact must logically render probable the existence of the fact in issue. Crowley v. Crowley, 360 S.W.2d 293, 296 (Mo.App. 1962). Charles F. Curry and Company v. Hedrick, 378 S.W.2d 522, 536 (Mo.1964).

This evidence would only be admissible if it tended to prove or disprove the ultimate fact of accessibility. No language of the statute nor any case law construing it even remotely suggests the relevance of any inquiry as to the financial effect of a transfer of students as bearing on the issue of accessibility. It follows that the trial court correctly excluded the evidence offered.

The judgment is affirmed.

All concur.