Robert W. BERGEL, Plaintiff-Appellant,

v.

David E. KASSEBAUM, Ronald Conway, and Gale Traiteur, Defendants-Respondents.

No. 39527.

Missouri Court of Appeals, St. Louis District, Division Four.

Dec. 19, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 16, 1979.

Application to Transfer Denied April 10, 1979.

Edward J. Delworth, St. Louis, for plaintiff-appellant.

John C. Livingston, Whalen, O'Connor, Danis & Tobben, St. Louis, for David E. Kassebaum and Gale Traiteur.

W. Munro Roberts, Jr., Roberts, Heneghan & Coffelt, Inc., St. Louis, for Ronald Conway.

SNYDER, Judge.

Suit for damages for false imprisonment against David Kassebaum, an off-duty City of St. Louis police officer, Ronald Conway, a Crestwood police officer and Gale Traiteur, a private citizen, stemming from plaintiff-appellant's arrest on October 5, 1973 at the Crestwood Plaza Shopping Center. The case was tried to a jury. A directed verdict was granted for Traiteur at the close of plaintiff-appellant's evidence. The jury returned a verdict for defendants-respondents Kassebaum and Conway and plaintiff-appellant appeals. Affirmed in part; reversed in part; remanded for a new trial.

Appellant alleges the trial court erred in: (1) denying his motion to direct respondent Conway to make more definite and certain his answer to appellant's first amended petition; (2) granting respondent Traiteur's motion for a directed verdict at the close of appellant's evidence; (3) giving Instruction No. 6 to the jury, respondent Conway's verdict director; (4) allowing respondent Conway to interrogate witnesses about incidents involving advances toward female employees at Crestwood Plaza; (5) refusing to allow appellant to question respondent Conway about his written police report on appellant's arrest; and (6) sustaining respondents' objections to portions of appellant's closing argument.

As a backdrop, it should be noted that there was some apprehension in the community at the time of this incident about the "South County Rapist." A composite sketch of the suspected assailant had been broadcast on television in the St. Louis area. Appellant happened to bear some resemblance to this composite sketch. He also drove a car that matched the general description of the car believed to be driven by the "South County Rapist."

After work on the afternoon of Friday, October 5, 1973, appellant went to Crestwood Plaza to do some shopping and banking. While walking through the shopping

mall, he noticed a woman, Susan Kassebaum, seated and holding a baby. Appellant went up to Mrs. Kassebaum and attempted to make conversation with her about the baby. According to him, she appeared unfriendly and he left.

At trial, there were various descriptions of Mrs. Kassebaum's emotional state during and after this incident. Appellant testified she was unfriendly but not upset. Mrs. Kassebaum stated she was frightened, scared and terrified for herself and her child because of appellant's appearance (long hair, sideburns, blue jeans and work shirt). Mr. Traiteur testified she was scared and frightened to the point of being near hysterics and that she attempted to move away and pull back from the appellant while he was talking to her. Mr. Kassebaum testified his wife was extremely upset after the incident, mumbling, crying and clutching the baby.

After appellant left, Mrs. Kassebaum was immediately approached by a bystander, Mr. Traiteur, who asked if she needed help. She told him to find her husband and bring him back, which Traiteur did. Mrs. Kassebaum told her husband that a man who resembled the composite sketch of the "South County Rapist" had touched the baby and "bothered" her. Traiteur and Kassebaum then went to look for appellant and found him at the B. Dalton Bookseller bookstore. Kassebaum identified himself as a police officer, asked appellant some questions and then instructed appellant to come along with him to a phone, where he called the Crestwood Police. When Officer Conway of the Crestwood Police arrived, he had a discussion with Kassebaum in which Kassebaum related the incident between appellant and Mrs. Kassebaum and told Conway that his wife believed appellant resembled the sketch of the "South County Rapist." Kassebaum also told Conway that he (Kassebaum) did not wish to prosecute. After some further questioning, Conway arrested appellant. Kassebaum assisted in handcuffing appellant when appellant made what Conway perceived as a threatening move. Once appellant was placed in the squad car, Conway informed him he was "under arrest for investigation suspect rape and resisting arrest."

At the Crestwood police station, appellant was "booked," questioned and viewed by an employee of a Crestwood Plaza department store who had been harassed at that store by a man who also resembled the "South County Rapist." She could not identify appellant. Appellant was finally charged with resisting arrest and disturbing the peace. He was later found not guilty of those charges in Crestwood Municipal Court.

■ Appellant's first point is that the trial court erred in overruling his motion to require respondent Conway to make a more definite statement of his affirmative defense. In his answer to appellant's first amended petition Conway stated, by way of affirmative defense, that he "had reasonable grounds or probable cause to believe that plaintiff had committed a wrongful act and to place plaintiff under arrest therefor." Nowhere in Conway's answer is the nature of this "wrongful act" specified.

Accepting appellant's argument that this answer did not raise the affirmative defense of probable cause because of its failure to plead the facts establishing probable cause, appellant tried the issue by implied consent when he failed to object to the introduction of evidence on the defense. Rule 55.33(b); *Harris v. Goggins,* 374 S.W.2d 6 (Mo. banc 1963). Although the *Harris* case involved a defendant's motion to dismiss plaintiff's petition for failure to state a claim, the same logic applies here. To preserve the issue for appellate review, appellant must make the motion, object at trial to admission of evidence on the issue (on the ground that it is beyond the scope of the pleadings) and include the issue in his motion for new trial. Appellant failed to object and the issue is not preserved.

■ However, because the case is to be remanded for a new trial as to respondent Conway, the trial court is instructed to require him to make a more definite statement of his defense. The object of pleading is to form specific and definite issues of

fact. *Zancker v. Northern Ins. Co. of New York,* 238 Mo.App. 110, 176 S.W.2d 523 (Mo. App.1944). Pleadings are not to serve as ambushes. *Cook v. Bolin,* 296 S.W.2d 181 (Mo.App.1956). Pleadings must state facts, not conclusions. *Sinclair Refining Co. v. Wyatt,* 347 Mo. 862, 149 S.W.2d 353 (Mo. 1941). The averment of a legal conclusion is not a statement of fact, and the phrase "wrongful act" is simply a legal conclusion on respondent's part, unsupported by pleaded facts. It is evident from the transcript that the trying of this case would have been aided by a clear statement of the "wrongful act" relied on as the basis of respondent's probable cause defense. A fair reading of Rules 55.04, 55.07, 55.08 and 55.27(d) requires that statement.

Did the trial court err in granting a directed verdict for defendant Traiteur at the close of appellant's evidence?

[1–4] The granting of a directed verdict at the close of the plaintiffs' evidence is a drastic action which should be taken only when all the evidence and reasonable inferences therefrom are so strongly against the plaintiff that reasonable men could not differ. When the party having the burden of proof has adduced substantive evidence on a pleaded issue, that issue should be submitted to the jury and it is reversible error to direct a verdict against that party. In deciding whether the plaintiffs in this case adduced substantial evidence which would require that their theory of [defendant's] negligence be submitted to the jury, it is our duty to view the evidence before the trial judge who directed the verdict against the plaintiffs in a light most favorable to the plaintiffs and indulge in all reasonable inferences from the evidence in their favor. Except when unreasonable or opposed to physical laws, plaintiffs' evidence must be taken as true. However, we must find substantial evidence supporting plaintiffs' claim; a mere scintilla of evidence is not sufficient. *Eyler v. Allison,* 500 S.W.2d 49, 50[1–6] (Mo.App. 1973). [*Kaelin v. Nuelle,* 537 S.W.2d 226, 229–230 (Mo.App.1976)].

■ What was the evidence regarding Mr. Traiteur's involvement in appellant's arrest? Appellant testified that while he was being questioned by Kassebaum, at or just outside the B. Dalton Bookseller bookstore, he noticed another person in the background (Traiteur). When appellant and Kassebaum left B. Dalton, Traiteur followed approximately five feet behind them. Traiteur apparently left the scene while Kassebaum was phoning the Crestwood police because appellant did not see Traiteur again until appellant and Kassebaum were seated outside the mall awaiting the arrival of the Crestwood police. He then noticed Traiteur "was behind us and maybe off to my left sometimes." Appellant never heard Traiteur speak to Kassebaum, nor did Traiteur speak to appellant. Appellant admitted on cross-examination that he was not "even sure whether or not Mr. Traiteur knew Mr. Kassebaum."

Appellant completed his case by reading from Mr. Traiteur's deposition. Traiteur stated he was asked by Kassebaum whether he would identify the fellow who had bothered Mrs. Kassebaum. After Traiteur agreed to do that, he and Kassebaum went looking for the man and found him the B. Dalton Bookseller bookstore. He accompanied Kassebaum into the bookstore and observed Kassebaum's conversation with appellant. Kassebaum, having identified himself as a police officer and displayed his badge, questioned appellant. When appellant and Kassebaum left the vicinity of the bookstore, Traiteur followed behind them because he was going in that direction to pick up a sewing machine.

"[3–4] It is thoroughly settled law that a person is liable for false arrest made by another if he 'directed, advised, countenanced, encouraged, or instigated' such arrest. *Snider v. Wimberly,* 357 Mo. 491, 209 S.W.2d 239." *Knupp v. Esslinger,* 363 S.W.2d 210, 213 (Mo.App.1962).

"Instigate" means to stimulate or goad to an action. "Abet," a synonym for "instigate," means " ' "to aid, promote, or encourage the commission of an offense." ' " *Snider v. Wimberly,* 357 Mo. 491, 209 S.W.2d

239, 242 (Mo.1948), quoting *State v. Fraker,* 148 Mo. 143, 49 S.W. 1017 (Mo.1899). "Countenance" means to " 'encourage, favor, approve,' " its synonyms being " 'sanction, endorse, support.' " *Snider, supra,* 242, quoting Webster's New International Dictionary, 2d Ed. See also *Vimont v. S. S. Kressge Co.,* 291 S.W. 159 (Mo.App.1927); *Checkeye v. John Bettendorf Market,* 257 S.W.2d 202 (Mo.App.1953). But, "to 'countenance' an act means something more than to witness it." *Cooper v. Johnson,* 81 Mo. 483, 490 (Mo.1884).

Appellant failed to produce any evidence that Traiteur directed, advised, or encouraged his arrest. In response to a request by Kassebaum, Traiteur accompanied him in an attempt to find the man who had "bothered" Kassebaum's wife. There is no evidence Traiteur at any time suggested or directed any action be taken once that man was found. While he provided identification of appellant, one does not participate in a false arrest so as to become liable therefor "where he does nothing to affect the arrest or imprisonment except to accompany an officer to identify one suspected of an offense, even where the identification may have been the principal cause of the wrongful arrest." 32 Am.Jur.2d, False Imprisonment § 35.

Traiteur's action following his identification of appellant could not be categorized as endorsing or supporting the arrest. His presence outside the mall was simply motivated by curiosity. He did not aid in taking appellant into custody; he did not help "guard" appellant while appellant and Kassebaum waited for the police; he did not accompany appellant and the officers to the police station. Traiteur did *nothing to initiate or procure appellant's arrest.* Traiteur's interest in appellant's arrest was simply the interest of a citizen who has observed a possible offense and identified the possible offender.

Therefore, because appellant failed to adduce substantial evidence which would require that his theory of Traiteur's liability be submitted to the jury, the trial court ruled properly in granting Traiteur's mo-

tion for a directed verdict at the close of appellant's evidence. *Kaelin, supra.*

Appellant contends the trial court erred in giving respondent Conway's Instruction No. 6, which read:

Your verdict must be for defendant Ronald Conway if you believe:

First, defendant Ronald Conway had reasonable grounds or probable cause to believe that Plaintiff had committed the crime of rape or that defendant Ronald Conway had reasonable grounds or probable cause to believe that Plaintiff may have committed the crime of rape.

Appellant objects to the language "or that defendant Ronald Conway had reasonable grounds or probable cause to believe that Plaintiff *may have committed* the crime of rape," and argues that the instruction: (1) misstates the law, and (2) is repetitious and places undue emphasis on the *right of arrest.* Because the emphasized language is a prejudicially erroneous misstatement of law, the second ground need not be reached.

■ It is generally recognized that a police officer making an arrest without a warrant for a felony not committed in his presence is not liable in an action for false imprisonment when he believes on reasonable grounds or with probable cause, that the person he is arresting has committed or is committing a felony. 32 Am.Jur.2d, False Imprisonment, § 79; 35 C.J.S. False Imprisonment § 22.

Missouri courts have frequently been called upon to define "probable cause" in deciding questions regarding the constitutionality of arrests and subsequent searches and seizures. In none of the cases researched have the courts defined probable cause to include a belief that the arrestee "may have committed" a crime. Rather, the supreme court indicated in *State v. Hicks,* 515 S.W.2d 518, 521 (Mo.1974) that "the requirement of probable cause can never be satisfied with a bare suspicion of guilt. [cites omitted]."

[2, 3] Probable cause to legally justify a warrantless search is virtually incapable of being defined in precise or exact terms. When faced with the necessity of

resolving the existence or nonexistence of probable cause to support a warrantless arrest, courts look at the particular facts at hand to see if sufficient information of a reliable or trustworthy nature existed to cause a 'prudent' or 'reasonable' man to believe *that the arrestee committed the offense* for which he was arrested. [cites omitted].

*State v. Love,* 546 S.W.2d 441, 449 (Mo.App. 1976) (Emphasis supplied). Similarly, the court stated in *State v. Singleton,* 560 S.W.2d 379, 384 (Mo.App.1977), that "the test [for whether probable cause to effect a warrantless arrest exists] is whether the officer had reasonable grounds to believe *that the subject had committed or was in the process of committing a crime.* [cites omitted]." (Emphasis supplied). See also *State v. Hicks, supra,* 521 ["to believe that appellant had committed the murder."]; *State v. Gant,* 490 S.W.2d 46, 48 (Mo.1973) [" 'to suspect that the person arrested has committed a felony.' "]; *State v. Ward,* 457 S.W.2d 701, 705–706 (Mo.1970) [" 'to believe that the person arrested is guilty of a recent felony.' "; "that an offense has been committed by the arrested. (cites omitted)."]; *State v. Greenhaw,* 553 S.W.2d 318, 325 (Mo.App.1977) [" 'in believing that the petitioner had committed or was committing an offense.' "]; and *State v. Howell,* 543 S.W.2d 836, 838 (Mo.App.1976) ["in believing that defendant had committed the offenses."]

■ These cases illustrate that only the first portion of Instruction No. 6 correctly stated the substantive law on the justification of probable cause for arrest. The inclusion of the "may have committed" language amounts to the approval of an impermissible additional degree of uncertainty in respondent's belief at the time of appellant's arrest. Whether that uncertainty goes to identification or the commission of the offense is unclear. It is clear, however, that respondent's instruction should have been limited to the first portion of Instruction No. 6, in accordance with the case law outlined. (It should be noted that MAI 32.13 does not include any "may have committed" language.)

This objection to the instruction is not a " 'hypercritical' " demand for " 'technical accuracy.' " *Stein v. McDonald,* 394 S.W.2d 297, 299 (Mo.1965). Respondent's instruction furnished a misleading guide to the jury on a key element of substantive law. "Instructions may not be confusing, misleading, inadequate nor prejudicially erroneous. *Tile-Craft Products Co. v. Colonial Properties, Inc.,* 449 S.W.2d 653, 656 (Mo. 1970)." *Woodford v. Illinois Central Gulf Railroad Co.,* 518 S.W.2d 712, 716 (Mo.App. 1974). This error in the instructions necessitates reversal and remand for a new trial as to respondent Conway.

Appellant argues that the trial court erred in admitting immaterial and irrelevant testimony by witnesses Judy Fieser and Fred Stewart, and by respondent Conway, regarding incidents, other than the one involving Ms. Fieser, of unwarranted advances toward female employees of the Sears store at Crestwood Plaza.

Ms. Fieser, a Sears employee, was called by appellant and recounted an incident of harassment she had been subjected to at the store. On cross-examination she was asked by respondent Conway if she was aware of any other similar incidents involving Sears employees. Appellant raised a general objection—"I object."—and failed to secure a ruling on his objection.

Respondent Conway, testifying on his own behalf, was asked if he was aware of instances of female employees of the Sears store being harassed. Appellant objected to such testimony on the grounds that it was irrelevant and immaterial. The objection was overruled and the testimony admitted. Conway stated he was aware of several incidents of harassment at the Sears store and that he knew the man suspected was a white male in his twenties with long hair and sideburns. He supposedly was driving a 1962–1964 medium-sized, white automobile.

Fred Stewart, a Crestwood police officer also testified, again over appellant's objection, that he had investigated complaints of "unwarranted advances toward female em-

ployees" at the Sears store in October of 1973.

■ Appellant's point with regard to Ms. Fieser's testimony has not been preserved for review. When the challenged testimony was given, appellant made only a general objection—"I object." An objection to the admissibility of evidence must be specific and contain the proper ground for exclusion. *Stafford v. Lyon,* 413 S.W.2d 495 (Mo.1967); *Negley B. Calvin, Inc. v. Cornet,* 427 S.W.2d 741 (Mo.App.1968). A mere general objection to evidence is insufficient to preserve the matter for review. *O'Donnell v. General Motors Corp.,* 534 S.W.2d 271 (Mo.App.1976). Further, appellant failed to insist upon a ruling on his objection and thereby waived whatever objection he might have had. *State v. Hart,* 417 S.W.2d 193, 195 (Mo.App.1967).

The relevancy and materiality of the testimony on other incidents of harassment can best be determined by examining the purposes for which it was introduced. Did it establish a fact which tended to prove a fact in issue or logically render probable the existence of a fact in issue? *Haymart v. Freiberger,* 498 S.W.2d 590 (Mo.App.1973).

Appellant introduced evidence of the Fieser incident in an attempt to show that respondent Conway had arrested him because Conway suspected appellant was involved in the harassment of Ms. Fieser. Conway brought out evidence of other incidents in an attempt to show that a man who matched the description of appellant and the "South County Rapist," and who supposedly drove a car matching their automobiles, had been present at Crestwood Plaza and had harassed Sears female employees in a manner slightly similar to the incident here. In other words, Conway tried to show he had reason to believe the "South County Rapist" and the culprit in the Sears incidents were the same person. The Sears incidents would, therefore, tend to establish the probable cause necessary to justify the warrantless arrest of appellant.

■ The existence of probable cause for appellant's arrest had been raised by Con-

way's answer and clearly was in issue. Because the challenged testimony recounted incidents which were closely related in time to appellant's arrest and which were supposedly perpetrated by a man matching the description of the "South County Rapist," the testimony was admissible. Compare *Nesmith v. Alford,* 318 F.2d 110 (5th Cir. 1963). While the probative value of the evidence may have been tenuous, "the admission of evidence is largely a discretionary matter and absent clear abuse we will not interfere with the trial court's ruling. [cites omitted]." *Aiple v. Southside National Bank in St. Louis,* 442 S.W.2d 145, 152 (Mo.App.1969).

In connection with this incident, appellant was charged with resisting arrest and disturbing the peace. He was found not guilty of those charges. Appellant testified that he subsequently filed suit in St. Louis County Circuit Court and succeeded in having the record of his arrest expunged pursuant to § 610.100, RSMo Cum.Supp.1975.

In the course of cross-examining respondent Conway, appellant's counsel asked him whether respondent Kassebaum had told him that Kassebaum "was holding Mr. Bergel?" When Conway responded that Kassebaum had not said that, counsel inquired, "subsequent to this incident, you made up some reports for the City of Crestwood, did you not?" Conway replied that he had and counsel then requested a discussion before the bench, in which he indicated he wanted to use the police arrest report made out by Conway to show Kassebaum had made such a statement. Respondents objected to the use of the police report on the ground that it had been expunged and, therefore, was no longer in existence.

At this point, the trial court indicated it wanted to see the order of the circuit court in the expungement proceeding and sent its clerk to obtain a copy. Noting that the witness could be recalled, the trial court instructed appellant's counsel to proceed. Cross-examination of respondent Conway resumed on a different topic.

Appellant's counsel was still cross-examining Conway when the order in the ex-

pungement proceeding was produced. Counsel approached the bench and, out of the hearing of the jury, the court read the order which requested the Chief of Police of Crestwood, a St. Louis County police officer, and the Superintendent of the State Highway Patrol, "to destroy all records of petitioner pertaining to his arrest on October 5, 1973, by the Police in the City of Crestwood in accordance with the order entered by the Court at this time."

The trial court ruled that since the records were destroyed and the file sealed, no records of appellant's arrest could be brought before the court in this proceeding. Appellant then made an offer of proof of the contents of the police report. When counsel persisted in the matter, the trial court informed him, "You can't get into it. You can't say anything about the report. Say whatever you want to say, but don't get into the report." Proceedings resumed and appellant did not raise any further questions on the report.

Did the trial court err in sustaining the respondents' objections to appellant's use of Conway's police report?

Section 610.100, RSMo Cum.Supp.1975, the statutory section authorizing expungement of arrest records provides:

> If any person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested. If there is no conviction within one year after the records are closed, all records of the arrest and of any detention or confinement incident thereto shall be expunged in any city or county having a population of five hundred thousand or more.

Appellant does not cite, nor does research disclose, any case law or other authority on the admissibility of expunged records. An argument could be made that a party, for whose benefit and protection a record is expunged, should be able to waive that protection and use the expunged record in another proceeding. Such an argument, however, ignores the essential nature of an expungement proceeding, for it is an action to destroy or permanently seal a record.

Black's Law Dictionary, Revised Fourth Edition, defines "expunge" to mean: "to destroy or obliterate; it implies not a legal act, but a physical annihilation. *Andrews v. Police Court of City of Stockton,* Cal. App., 123 P.2d 128, 129. To blot out; to efface designedly; to obliterate; to strike out wholly. Webster." Also see *Natalizia v. Atlantic Tubing and Rubber Co.,* 81 R.I. 515, 105 A.2d 190 (1954); *State v. Chambers,* 533 P.2d 876 (Utah 1975); *Application of Brandon,* 131 N.Y.S.2d 204 (1954). These definitions were approved by this court in *State ex rel. M.B. v. Brown,* 532 S.W.2d 893 (Mo.App.1976).

> [4,5] In considering the intent of the legislature when it used the term 'expunge' . . . we follow the primary rule of statutory construction to ascertain intent from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. [cites omitted].

*State ex rel. M.B., supra,* 896.

In *State ex rel. M.B.,* the court held that the language of § 195.290, RSMo 1969 which allows a youthful offender who has successfully completed probation to apply to the court which sentenced him "for an order to expunge from all official records . . . all recordations of his arrest, trial and conviction" did not mandate the physical destruction of the entire record. Relying on the word "from," the court held, at page 896, that the offender was only entitled to an order "striking out, blotting, obliterating or in any manner completely concealing or excising the name of the offender, his address and any other identification which might associate him with the records of the court." The record would be left intact; only those portions which identified or connected the offender with the record would be destroyed.

Section 610.100 does not use the language of § 195.290 and only states that

"all records of arrest . . . shall be expunged." The language of § 610.100 does not support a partial expungement. It must be assumed, therefore, that when the legislature provided "all records of arrest and of any detention or confinement incident thereto shall be expunged" it meant to use "expunge" in the sense defined by Black's and the case law. Thus, when appellant's arrest record was "expunged," it was destroyed. If it was destroyed, it was not available to appellant for use in this proceeding and the trial court properly sustained respondents' objections to its use. Even if the rationale of *State ex rel. M.B., supra,* were adopted, there would be no way to identify appellant with any specific arrest record. The same decision on the question of admissibility would be required.

Appellant's final contention is that the trial court improperly restricted his final argument to the jury. His comments, objections to which were sustained, fall into three categories: (1) comment on witness Traiteur; (2) comment on the evidence in the case; and (3) comment on the law in the case.

 It is well established that, "[t]he regulation of argument is a matter largely within the discretion of the trial court and it is the policy of the law to indulge a liberal attitude in ruling contentions relating to jury argument. [cites omitted]." *Beesley v. Howe,* 478 S.W.2d 649, 652–653 (Mo.1972). The trial court's actions must be reviewed by that standard. An appellate court will not interfere with that determination unless an abuse of discretion is found. *Helfrick v. Taylor,* 440 S.W.2d 940 (Mo.1969).

 (1) During his summation, appellant's counsel stated:

"I can sympathize in Mr. Traiteur wanting to help this lady, but Mr. Traiteur had something unfortunate about his personality. He is a man that is apparently easily led in what he does and . . . ." An objection was made and sustained.

"[1–3] It is axiomatic counsel should neither argue nor draw inferences from matters not in evidence and that a trial court errs in permitting such a discourse." *Hodges v. Johnson,* 417 S.W.2d 685, 689 (Mo.App.1967). There was no evidence in the case of "something unfortunate" in Mr. Traiteur's personality, nor was there evidence that he was "easily led in what he does." The trial court would have erred had it permitted such comment. *Hodges, supra.* The objection was properly sustained.

 (2) Appellant charges the trial court erred at three different times in restricting his commentary on the evidence in the case. First, appellant argued that "there must have been literally hundreds of people that were around in St. Louis County on October 5, 1973 that would answer the description" of the "South County Rapist." Appellant cites no evidence in the record to support this comment. Again, it would have been error for the trial court to permit this argument. *Davis v. City of Independence,* 404 S.W.2d 718 (Mo. banc 1966); *Hodges, supra.*

 The second claimed error occurred when appellant's counsel characterized as "ignominious" certain questions asked of appellant at the Crestwood Police Station. The nature of the questions [appellant's sexual proclivities and preferences] was developed by the evidence. The questions, while perhaps necessary to the investigation of sex crimes, could fairly be characterized as humiliating and degrading. Appellant's comment was not objectionable, as it surely fell within the broad field of argument afforded counsel in commenting upon the evidence in the course of his closing argument. *Lineberry v. Robinett,* 446 S.W.2d 481 (Mo.App.1969). Upon retrial of the case, appellant should be allowed to comment on the nature of the questioning at the police station, should that evidence be presented.

Third, appellant's counsel commented on the fact that no victims of the "South County Rapist" were brought to the Crestwood Police Station to view appellant after his arrest. After an initial objection was overruled, appellant's counsel continued, "If they had really been serious about that . . . if they had really believed he was

the South County Rapist, they would have gotten in the victims . . . ." Respondent Conway's objection was sustained.

No evidence was presented as to what procedures the Crestwood police followed in having victims view a suspected assailant. Without that evidence, an inference that a victim would be called in a "serious" investigation cannot be drawn. While the courts are liberal in allowing counsel wide latitude in drawing deductions and inferences from the evidence [*Anderson v. Robertson,* 402 S.W.2d 589 (Mo.App. 1966); *Johnson v. St. Louis Public Service Co.,* 256 S.W.2d 308 (Mo.App.1953)], those deductions and inferences must be based on evidence in the record. There is nothing in this record on which to base a charge that failing to bring in any of the "South County Rapist's" victims meant the respondent was not "serious" in his belief that appellant had committed the crime of rape. The trial court did not abuse its discretion in sustaining respondent's objection to the argument.

(3) Finally, appellant argues the trial court improperly restricted his comments upon the law in the case. The disputed comments came in appellant's discussion of the law applicable to respondent Kassebaum. Appellant stated: "I don't know, but in my opinion an arrest was accomplished at this point, and it's up to Mr. Kassebaum to justify that arrest" [objection sustained] and "If you believe that Mr. Kassebaum effected an arrest, then he must show that he had a right to make that arrest." [objection sustained].

Appellant's comments correctly state the rule on burden of proof where a defendant has asserted the justification or affirmative defense of probable cause in an action for false arrest. *Parrott v. Reis,* 441 S.W.2d 390, 392 (Mo.App.1969). However, respondent Kassebaum did not assert the defense of probable cause; he relied instead on the theory that he had made no arrest. Yet, the effect of appellant's comments was to "instruct" the jury as if Kassebaum were relying on the affirmative defense of probable cause. Appellant's comments, if allowed to stand, would have interjected a false issue as to respondent Kassebaum.

"Instructing the jury is, of course, the province of the court. While counsel had the right to base his argument on instructions given by the court, he was not privileged to give instructions on the law different from those given by the court." *State v. Bailey,* 234 Mo.App. 168, 115 S.W.2d 17, 23 (Mo.App.1923).

The court properly sustained the objection to appellant's comments on the instruction, as they were not based on the instructions given by the court.

Because the trial court did not err in sustaining Kassebaum's objections to the introduction of the expunged arrest record or to the comments on the law in closing argument, the judgment in favor of respondent Kassebaum is affirmed.

The judgment in favor of respondent Traiteur is affirmed. The judgment in favor of respondent Conway is reversed and remanded, with instructions for a new trial.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.