Mr. and Mrs. Joseph E. STURGESS, Mr. and Mrs. Glen W. Pendegraft, Theron Carl Sturgess, by his next friend, Joseph E. Sturgess, and Bryan Pendegraft, by his next friend, Glen W. Pendegraft, Relators-Respondents,

v.

Mr. Robert GUERRANT, Mr. George H. Carrington, Mr. E. C. Tennyson, Mr. Ernest Wagner, Mr. Clyde Hickman, Mr. Frank Mahoney, Jr., and Mr. Robert Hunt, Sr., Respondents,

Gary Vandelicht, Monroe Bartley, Jim Meyer, Stanley Brown, Wayne Brooks and Richard Smart, Intervenors-Appellants.

No. KCD 30199.

Missouri Court of Appeals, Western District.

June 11, 1979.

Larry M. Woods, Sapp, Woods & Orr, Columbia, for intervenors-appellants.

James C. Swearengen, Kenneth R. Scatterly, Hawkins, Brydon & Swearengen, P.C., Jefferson City, for relators-respondents.

Before SHANGLER, P. J., and WASSERSTROM and CLARK, JJ.

WASSERSTROM, Judge.

The parents of Theron Sturgess and the parents of Bryan Pendegraft applied to the Board of Directors of South Callaway R–II School District (hereafter referred to as "the Board") for reassignment of these two children to the Fulton School District under the authority of Section 167.121.[1] The Board declined to make either reassignment. The parents, on behalf of themselves and as next friend of their respective children, filed a joint petition in the circuit court for mandamus to compel the transfers. The circuit court issued its alternative writ and thereafter its preemptory writ in favor of the relators. The Board appeals.

---

1. All statutory references, unless otherwise noted, are to RSMo 1969. Section 167.121 provides as follows: "If any pupil is so located that a school in another district is more accessible, the county board of education shall assign the pupil to the other district. The board of education of the district in which the pupil lives shall pay the tuition of the pupil assigned. The tuition shall not exceed the pro rata cost of instruction."

As a preliminary matter, we note that the relators failed to follow the customary practice of filing their application for mandamus in the name of the State. However, no point has been made with respect to this in either the trial court or in this court. Inasmuch as the defect is not jurisdictional, we will proceed to a consideration of the cause on its merits. *England v. Eckley,* 330 S.W.2d 738, l.c. 740 (Mo. banc 1960). This matter is mentioned only for the purpose of preventing the bar from being misled as to the proper form of procedure through any reliance upon the manner in which the present case is styled.

The facts are undisputed. The Sturgess and Pendegraft families live in the South Callaway R–II School District, and Theron and Bryan would both normally attend the Mokane Elementary School. However the area in which they live is much closer to the schools in the Fulton School District. Because of the greater convenience to the families in this area of sending their children to the Fulton schools, a petition was filed and an election held in 1972 with respect to a change of the school boundary line. Although the voters in the Fulton School District and the residents of this particular area voted in favor of a boundary change, the proposed change failed because of an adverse vote of the voters as a whole in the South Callaway R–II School District.

In 1976, Theron attained school age and the Sturgesses filed an application on April 25, 1976, to the Board for reassignment of Theron to the Fulton District. At a meeting of the Board, of which notice was sent to the Sturgesses, but which they did not attend, the Sturgess application was denied on July 14, 1976. The Sturgesses nevertheless enrolled Theron in the Bush Elementary School in the Fulton District at their own expense. They again requested a reassignment of Theron and the request was again denied on December 17, 1976.

Bryan Pendegraft was 11 years old at the time of the trial. He had attended the Mokane School until January 27, 1977. He was having reading difficulty, but the Mokane School had no remedial reading program.[2] The Pendegrafts therefore requested a reassignment to the Fulton School District which did have such a program, but their application was denied by the Board on March 9, 1977. The Pendegrafts nevertheless enrolled Bryan in the Center School in the Fulton District at their own expense, and Bryan attended that school for the balance of the school year.

The application for mandamus by the two families to compel reassignment of the two children was filed in the circuit court on April 19, 1977, and alleged in accordance with the statutory language of Section 167.-121 that the Fulton schools were "more accessible" to them than the Mokane School. An alternative writ was issued by the circuit court, to which the Board filed a return in which it denied the allegation of greater accessibility of the Fulton schools. In addition, the Board's return alleged "that to permit reassignment of said students to the Fulton School District will set a dangerous precedent by the Court which in effect constitutes a rewriting of the boundary lines of said school districts involved."

Preliminary to the trial in the circuit court, the parties entered into a stipulation which included the following facts. If Theron were required to attend the Mokane School, that would require a round trip of 46.6 miles each day. In contrast, the round trip to the Bush School is only 7.4 miles. The difference in daily mileage for Theron therefore comes to 39.2 miles. Bryan would have to travel 47.8 miles daily to the Mokane School, whereas the distance for the round trip to the Center School is only 8 miles, for a difference of 39.8 miles daily. On the other hand, South Callaway R–II District is the only school district authorized to furnish transportation to these children, and no such transportation is provided by the Fulton School District to them.

Additional facts were introduced by way of testimony. Uncontradicted testimony on

2. At the time of the trial, a remedial reading program had been formulated for the Mokane School and was to be available for the 1977–1978 school year.

behalf of Theron showed that his father is employed by the Fulton School District, the mother also works in Fulton, both travel there to work, and one or the other drives Theron to and from the Bush school. If both parents are delayed in the after school pickup for any reason, Theron can walk to the home of a babysitter who lives two blocks from the school and where Theron's younger sister is cared for during the day. As an alternative to that, neighbors who have children in the Fulton schools can pick Theron up and take him home.

The Sturgesses attend church in Fulton and they do their shopping and banking there. Their doctor and dentist are located in Fulton. If Theron were required to take the Mokane School bus, in the morning he would have to cross the road in front of his house to get to the bus, and that road has been the scene of some traffic accidents. Mrs. Sturgess works with the Bush School PTA assisting in school activities there, was president of the Fulton Art League and has been a member of the hospital auxiliary of Fulton. If the Mokane bus were utilized, Theron could arrive home before his parents and there would be no one to receive him.

The following uncontradicted testimony was offered with respect to Bryan. During his partial year attendance at Center School, he was driven each way by his mother in the family car. During the time he was at the Mokane School, he started but had to drop out of Cub Scouts because of the distance involved. He would have liked to attend school basketball games, but it was impossible for him to do so. He did not enter into any extracurricular activities at the Center School because he entered there too late in the school year, but during the ensuing school year he expected to participate in school wrestling and school basketball. Mrs. Pendegraft had been unable to participate in PTA activities at the Mokane School, but intended to participate in the PTA at the Center School. Bryan has an ear affliction, and the doctor to whom he goes for periodic attention is located in Fulton. The Pendegrafts do their shopping and banking in Fulton.

For its first point on appeal, the Board argues that the trial court erred in issuing its writ of mandamus because by doing so it improperly substituted its discretion for that of the Board. In support of that contention, the Board invokes the rule that mandamus will not lie to control or coerce a discretionary act of an administrative body. However, the rule relied upon by the Board was held in *State ex rel. Seidl v. Jefferson County Board of Education,* 548 S.W.2d 853 (Mo.App.1977) to be subject to the following exception: "Exception to the general rule is that in cases of undisputed facts, where the discretion of the official could legally be exercised in only one way, the court may issue mandamus to control discretionary acts." Furthermore, *State ex rel. Shepherd v. St. Louis County Board of Education,* 542 S.W.2d 55 (Mo.App.1976) holds that judicial review of a refusal to reassign a student to a different school district is governed by Rule 100.08 and Section 536.150, and that under that authority a court has the power to review the Board's action for an alleged abuse of discretion.

But, says the Board, it reviewed all of the factors listed in *State ex rel. Seidl v. Jefferson County Board of Education, supra,* as bearing on the concept of "accessibility," it reached a reasonable conclusion based upon a balancing of those factors, and therefore its denial of the reassignments cannot be deemed an abuse of discretion. In this connection, the Board relies upon a portion of the trial court's memorandum which states as follows: "[I]t would appear from the evidence adduced at the trial that as to distance and where parents worked, both would be resolved in favor of relators. That as to the question of available bus transportation, this would be resolved in favor of respondent and that the safety of the road as between traveling to Fulton by car or traveling to Mokane by bus would be a toss-up." The Board argues that upon this analysis, a reasonable conclusion could be reached either way, thus showing that the determination reached by the Board was not arbitrary or an abuse of discretion.

Whatever merit this argument may have had when the matter was before the Board or even at the time of hearing before the trial court in August, 1977, the argument no longer has any validity. On September 28, 1977, a new statutory provision became effective requiring that transportation of pupils transferred pursuant to Section 167.121 "shall be provided by the district of residence." Section 167.241, RSMo Supp.1977. That new section was in force at the time the trial court issued its peremptory writ of mandamus on February 23, 1978, and is still in force. An appellate court must decide a case on the basis of the law in effect at the time of the appellate decision. *United States v. The Schooner Peggy*, 5 U.S. 103 (1801); *Ziffrin, Inc. v. United States*, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943); *Dinsmore v. Southern Express Co.*, 183 U.S. 115, 22 S.Ct. 45, 46 L.Ed. 111 (1901); *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *De Rodulfa v. United States*, 149 U.S.App.D.C. 154, 461 F.2d 1240 (1972); 5 Am.Jur.2d Appeal and Error, Section 729, p. 173.

The advantage to these children of having school bus transportation to the Mokane School, in contrast to no bus transportation to the Fulton schools, has therefore been eliminated. With the element of transportation by school bus thus taken out of the case, there is no substantial factor weighing in favor of the determination made by the Board. This case therefore falls within the discussion by Judge Dixon on behalf of this court in *Haymart v. Freiberger*, 498 S.W.2d 590, l.c. 593 (Mo.App.1973). That case involved a petition for mandamus in 1972 by parents who sought the reassignment of 14 children from the Mokane School to the Fulton schools. Those parents are now neighbors of the Sturgesses and Pendegrafts, and are so referred to in the evidence in the present case. This court affirmed a writ of mandamus requiring the transfer of those neighboring children. In the course of the *Haymart* opinion, the following appears at page 593:

"All of the evidence in this case disclosed that in addition to the proximity of the Fulton schools, other factors operated to make the Fulton schools more accessible in the broad sense of that term. Conceding that accessibility is not solely a matter of geography does not alter the fact in this case, that the children's ability to utilize all the services of the school was impaired if they were required to attend the Mokane School and that there was uncontroverted evidence that the road hazard would be greater, not only as to the distance and time involved, but as to the quality of the roads they would travel if they attended the Mokane School. Thus, considering all the factors, the Mokane School is clearly less accessible than the Fulton school. A contrary finding by the Superintendent based on the evidence adduced at the trial would very likely be so clearly arbitrary and capricious that it would be an abuse of discretion and permit the court's intervention on that ground."

For its second point on appeal the Board contends that the Sturgesses and Pendegrafts had the burden of satisfying the Board that the Fulton schools were more accessible, but that they failed in carrying that burden. To support that contention the Board argues that these applicants failed to appear and presented no evidence before the Board, although they had been notified of the meetings at which these applications were to be considered.

Even though it is true that neither the Sturgesses nor Pendegrafts appeared at the Board meetings in support of their respective applications, nevertheless the Board takes the strong position before this court that the Board members were "totally intimate" with all the factors involved and took all of the relevant factors into account. Thus, whether or not the necessary information was produced by the applicants, the Board did have full knowledge of the facts; and under the law the Board's "duty was to consider and act on the basis of all pertinent facts of which it had knowledge or information." *State ex rel. Shepherd v. St. Louis County Board of Education, supra* 542

S.W.2d at p. 59. Accordingly, the failure of the Sturgesses and Pendegrafts to appear and give evidence before the Board had no adverse effect and cannot excuse the erroneous action taken by the Board.

Another matter raised by the Board in the trial court will be answered, although not preserved for review by a Point Relied On. In its return to the alternative writ, the Board objected that the reassignment of Theron and Bryan would amount to "a rewriting of the boundary lines of said school districts." That objection fails to take into account and confuses the contrasting purposes of the two statutory procedures, and this error may have caused or contributed to the Board's determinations in this case.[3]

A change of boundary proceeding is a statutory method by which a whole group of school children in an entire area may be shifted from one school district to another. The procedure for reassignment under Section 167.121 is entirely different. The latter proceeding is on an individual basis, rather than on a group or area basis, and the purpose is to alleviate hardship or inconvenience to a particular individual family, with the result that each application must be considered separately on its own particular facts. *State ex rel. Seidl v. Jefferson County Board of Education, supra* at 857. And this provision for reassignment "should be liberally construed in order to effectuate its beneficent purpose." *School Dist. of Mexico, Mo. v. Maple Grove School District,* 359 S.W.2d 743, l.c. 746 (Mo.1962).

The trial court did not improperly state or apply the law, its decision is supported by substantial evidence and is not contrary to the weight of the evidence. Under the doctrine of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), that determination is entitled to affirmance. *State ex rel. Shepherd v. St. Louis County Board of Education, supra.*

Affirmed.

All concur.

3. It should be noted that in 1972 a comparable error was made by the County Superintendent of Schools with respect to reassignments from this same school area, as pointed out in *Haymart v. Freiberger, supra.*